WALDRON *et al.* *v.* ROMAINE.

The property in goods, sold in bond at New York for exportation to Canada, passes to the purchaser upon their delivery to a carrier selected by the vendee, although they remain subject to lien for duties, and to the custody of the officers of the customs until authority to pass them is received at the port of exportation, which authority the vendor volunteered to take the requisite steps for obtaining.

*So held,* where the goods were burned at Oswego, while detained there in consequence of the failure by the revenue officers at New York to transmit the requisite papers to Oswego.

APPEAL from the Supreme Court. Action to recover the price of a quantity of sugar alleged to have been sold and delivered by the plaintiffs to the defendant, in the month of April, 1853. The trial was had at the New York Circuit, in April, 1856. Under the direction of the judge, the jury found a verdict for the plaintiffs, subject to the opinion of the court at a general term, upon a case to be made.

At the general term, judgment was ordered for the plaintiffs, and the following statement of facts was made:

The plaintiffs sold the defendant a general bill of groceries; among them a parcel of imported sugar in bond, the duties being unpaid. The defendant was a merchant in Canada West, and bought the sugar, as well as the other groceries, with the intent that it should be forwarded thither, giving directions to the plaintiffs for their delivery to a certain transportation line for that purpose. The sugar being bought in bond, and for exportation to Canada, the price did not include the duties; and certain acts were requisite, under the revenue laws, to accomplish their transportation out of the United States. These acts were to be performed by the sellers, or by the purchasers under an order from the sellers. The routine is for the party who is to procure the goods from the warehouse to make a withdrawal entry: give a bond for exportation; and obtain a permit to take them from the warehouse, from which they are

Waldron *v.* Romaine.

sent, under the charge of a custom-house officer, to the place of delivery for transportation. Their lading for transportation is under the direction of a custom-house inspector, and the entries, with such lading certified by him, are by him returned to the custom-house, and thence forwarded by officers of the customs to the port of exportation. The party procuring the exportation has nothing to do with the goods or the papers after the shipment. The sale was made April 14, 1853: the plaintiffs made the withdrawal entry and executed the bond, April 19, by which they agreed within ninety days to furnish evidence that the goods had been exported to Canada. The goods were delivered on the 27th April, on board the boat of the transportation line which had been named by the defendant. Then the inspector received the papers, and certified the shipment, April 28, and returned the papers to the custom-house.

The goods arrived at Oswego (the port of exportation), about May 18th, and were taken from the boat by H. M. Ames & Co., the forwarders, and put in their private warehouse. They informed the defendant of this, May 20th, and he sent to them for the goods by a master of a vessel, who was to transport them from Oswego to defendant's place. Ames & Co. were forwarders selected by the defendant, not by the plaintiffs.

The papers were not sent forward by the officers of the customs in New York, and the goods lay at Oswego. A correspondence took place between the defendant and the plaintiffs about the papers, and every attention was given by the latter to the matter at the custom-house. The papers were lost, or neglected, by the custom-house officers at New York, and yet the plaintiffs were informed that they had gone forward. The sugar was consumed by fire, July 5, 1853, in the private warehouse of Ames & Co., in which they had been stored by permission of the collector at Oswego. The public warehouse at that port was not burned. After the fire, the papers were found at the custom-house in New York. The defendant appealed to this court.

*John H. Reynolds,* for the appellant.

*William M. Evarts,* for the respondents.

CLERKE, J. From the statement of facts, it appears that the plaintiffs did everything which they had contracted to do. They procured the goods from the warehouse to be forwarded; they made the withdrawal entry; they gave a bond for exportation, and obtained a permit to take them from the warehouse; and then the sugar was deposited in the vessel selected by the defendant for transportation.

As soon as this was done, did not the property pass from the plaintiffs, supposing, as we find nothing to the contrary, that the defendant had complied with the terms of the sale? If there was an agreement to sell this sugar to the defendant, if the latter fulfilled the terms of sale, and if the seller did everything that he undertook to do to put it in the exact place designated by the defendant, the plaintiff could not reclaim it except on the supposition of a fraud committed by the defendant, or of his bankruptcy, when the plaintiffs would have the right to seize it by the right of stoppage. *in transitu.* (*Buckley* v. *Furniss*, 17 Wend., 504; *Covell* v. *Hitchcock*, 23 id., 611.)

To be sure, the defendant could not take absolute possession of it until it passed to Canada, without first satisfying the claim of the United States government. In other words, he bought it subject to a contingent lien, as people every day buy personal and real property, subject to a pledge or mortgage. Nevertheless, their ownership in the thing is complete and absolute, subject to the lien or the qualified ownership of the pledgee or mortgagee. Beyond all doubt, they could sell it to any other person, still subject to the pledge or mortgage, without asking permission from their seller or vendor. So could the defendant in this case sell the sugar to any person the moment it was delivered on board the boat, without any intervention on the part of the plaintiffs. Indeed, before it was removed from the warehouse, while it remained in bond, if the defendant thought proper to abandon the idea of transporting the sugar, and preferred selling it at once, subject to the lien of the United States, he had an undoubted right to do so. He could do this on any point of the route from New York to Oswego.

Waldron *v.* Romaine.

Even if the plaintiffs were at all responsible for any injury arising from the neglect of the custom-house officers to forward papers to Oswego, still this would not reinvest the property in them so as to make the destruction of it by fire their loss; unless, indeed, it was a condition of the sale that, before it should be considered complete, this duty should be performed by them.

It is objected, that evidence of the conversation between Mr. Washington, the plaintiffs' brother, and Mr. Mumford, clerk in the customs, was erroneously admitted. On the theory of the defence, it was admissible. The defendant's counsel maintained that the plaintiffs were guilty of neglect in not making efforts at the custom-house to have the necessary papers forwarded to Oswego. The plaintiffs rebut this, by showing what was done at the custom-house, on their part, for this purpose; and, to characterize what was done, they introduce this conversation. Such a defence was not at all tenable; but, as it was attempted without objection, it was proper to allow the plaintiffs to give testimony to meet it. At all events, the ground upon which the defendant places his objection is not maintainable. These reasons apply to the objection taken to evidence of Isaacs.

The judgment of the Supreme Court should be affirmed.

SELDEN and WRIGHT, Js., dissented; all the other judges concurring,

Judgment affirmed.