Monell, J. (dissenting.)
Ho question arises in this case upon the right of stoppage in transitu. Such right can only be exercised upon the insolvency of the vendees. It is in the nature of an equitable lien for the unpaid purchase money of goods, under which the vendor may repossess himself of the goods, upon the insolvency of the vendee ; it cannot be exercised at the mere caprice of the vendor when no such insolvency exists. (The Constantia, 6 Rob. Adm. 321.) Hor is there any question arising under the statute of frauds. That statute is invoked only when there is a breach of a contract of ■sale, by the vendor in refusing to deliver, or of the vendee in refusing to accept. A lien upon the goods for the price, exists in favor of a vendor so long as the goods remain in his possession. The lien ceases when the goods have passed out of the possession of the vendor.
The only question in this case, therefore is, whether at the time of the levy the goods were out of the plaintiff’s legal possession. Within the decision in People v. Haynes, (14 Wend. 546,) the sale was complete without an actual delivery to the purchasers. In that case, the goods were selected by the purchasers, and directed to be forwarded to hiip at Boston, and to be sent on board the steamboat. The Chancellor says, (p. 563 :) “ The delivery of the hox on board the boat, to be sent on to the vendee’s residence, and detained there according to the directions on the box itself, was a valid delivery- of the goods, so as to divest the vendors of the possession, as well as of the title; leaving them the mere right of stoppage in transitu.”
Except as affected by the statute of frauds, a bargain and sale of goods, without delivery, is sufficient to divest the vendor’s title and vest it in the purchaser. If the sale be for cash, the vendor has a lien for the price, so long as the goods remain in his possession, (Story on Gar. § 499,) but, where the sale is upon a credit, and there is no agreement in respect to the delivery or possession of the goods, the purchaser has at once a complete right, not only of property, but of possession. (1 Pars. on Cont. 440.)
Delivery of goods to the vendee, either actual or construe *55 tive, will not take the case out of the statute of frauds, as respects the vendee. There must he an acceptance of the goods by him. The seller is bound by his delivery, and cannot reclaim his goods ; but the buyer has his option to keep the goods, and pay for them, or return them and not pay. (2 Pars, on Cont. 322.)
The distinction between a lien for the purchase price of goods, and the right of stoppage in transitu is clear. The former exist so long as the goods remain in the seller’s possession, and where the payment of the price is a condition precedent; no lien exists when the sale is on credit, and it ceases the moment the goods have passed out of the vendor’s possession. (Story on Cont. § 500.) The right of stoppage in transitu continues until the goods have arrived at their place of destination, and been transferred to the actual possession of the buyer. Possession is the test of a right of lien. Non-delivery to the vendee is the test of a right of stoppage in transitu. Although the right of stoppage continues until the goods have reached their destination, yet if the vendee meets them upon the road, and takes them into his own possession, the right of stoppage is lost. (Mills v. Ball, 2 B. & P. 457.) The right to intercept the goods in their passage is also affirmed in Oppenheim v. Russell, (3 B. & P. 42,) where Chambre, J. says: “ If goods are intercepted before the consignor has exercised his right of stoppage in transitu, and the purchaser takes an actual delivery from the carrier before the goods get to the end of their journey, such a delivery to him will be complete.”
. As between the plaintiffs and Dunlop & Dutton, the sale was'eomplete. The goods were selected and the price agreed upon. Nothing remained to be done, except to deliver. The sale was on a credit. The goods were put in boxes, the boxes marked and directed to Dunlop & Dutton, at Lockport, and delivered to a eartman to be forwarded to their destination.
There is no doubt, had the boxes, been delivered to the People’s line of steamboats, instead of to the Hudson river railroad, that the delivery would have been, complete. (People *56 v. Haynes, supra. Waldron v. Romaine, 22 N. Y. Rep. 368.) The title, not only, but the possession also, would have passed to the purchasers, the plaintiffs’ lien for the price would have been lost, and they would have been left with a bare right of stoppage in transitu ; and such a delivery would have been sufficient to have taken the case out of the statute of frauds.
The cartman who received the boxes, from the plaintiffs, delivered them, in violation of their directions, to the railroad company, instead of to the steamboat line. The cartman was selected by the plaintiffs, but the cartage was charged to Dun-lop & Dutton. When the boxes were delivered to the cart-man they passed out of the plaintiffs’ possession. The lien for the purchase money was gone, and the sellers could not reclaim their goods, except under the right of stoppage in transitu. And this is so, although the purchasers were not bound to accept, and might refuse to accept. For the purpose of changing the actual possession, the delivery to the cartman was sufficient. Per Tracy, senator, (People v. Haynes, supra, 565.)
If the question arose between Dunlop & Dutton and the plaintiffs, and the former were seeking to compel a delivery of the goods bargained and sold, it might be that the delivery to the cartman, or the delivery by him, in opposition to the plaintiffs’ direction, would not take the case out of the statute. But no such question arises here, and I think there is no doubt that Dunlop & Dutton could have intercepted the goods at 31st street, and accepted a delivery there, even against the consent of the carrier. (Mills v. Ball, Oppenheim v. Bussell, supra.) And such acceptance would have taken the case out of the statute. But the statute of frauds is not involved. The simple question is, whether the delivery to a cartman, and a deposit by Mm, with the railroad company, although in violation of the plaintiffs’ directions, was such a disposition of the goods as would deprive the plaintiffs of their lien for the purchase money.
I shall not contend that if the goods had been lost, the vendees would be liable. The delivery to a carrier other than the *57 one selected by them would probably relieve them from liabilty. But it does not lie with the plaintiffs to say that the purchasers shall not have their goods because they, the plaintiffs, undertook to forward them by a different conveyance. They took the risk of the goods reaching their destination, but they could not disaffirm the sale on that account, For as we have seen, Dunlop & Dutton could have intercepted and accepted the goods at any intermediate place; and their acceptance would have, made the sale and delivery complete.
In all the numerous cases to which we have been referred upon the subject of constructive delivery, the question has arisen under the statute of frauds, or in cases where it has been sought to cast the burthen of loss upon the purchaser. Ho case can be found, where the vendor has undertaken to deliver, and parted with the possession, which holds that he may reclaim or retake possession, except under the right of stoppage in transitu. Upon principle he has no such right. The bargain and sale was complete, and except for the statute of frauds, the purchasers could have claimed a delivery anywhere, even in the plaintiffs’ storehouse. Shall they be allowed to avail themselves of their own wrongful act, in transmitting the goods by a different carrier to deprive the purchasers of their right to receive them ? I think not. The sale on credit; the packing the goods selected by the purchasers; boxing and directing them and putting them in transit, was all the plaintiffs could do to consummate the sale. That they did all this, or any part of it, imperfectly, or in a manner different from the instructions of the purchasers cannot enlarge or prolong the lien, or defeat the right of the latter to claim acceptance.
If the plaintiffs’ lien was gone and the • purchasers could accept delivery anywhere, as I think I have shown they could, then the only remaining question is, were the goods, while in transit, subject to levy and sale under an execution issued upon a judgment against Dunlop & Dutton ?
The judgment creditor of Dunlop & Dutton was entitled to succeed to all their rights and interests, and to reach, by process, all their property. The defendant, by authority of *58 the execution, could seize any property of the judgment debtors and could sell any and all their interests. The purchaser would acquire all the interests and rights of the debtors. If the title was conditional, the purchaser could perform the condition and get a good title, as upon the sale of personal chattels mortgaged or pledged. (Strong v. Taylor, 2 Hill, 326, 328.)
It was competent for the sheriff to seize the goods in transit, as the property of Dunlop & Dutton, and the act of seizure was an act equivalent to the actual acceptance by them.
In Buckley v. Furniss, (15 Wend. 137,) the goods were ¡purchased in Troy and were in transit to the purchaser at Titus-ville. They were levied upon by the sheriff, at Malone, eight miles from their destination, under an execution against the purchaser. The vendors sued the sheriff, claiming the goods under their right of stoppage in transitu, and the court sustained the claim, on the ground that the goods had not reached their destination, or come to the actual possession of the vendee, and the right of stoppage in transitu was not lost. The court say: “ The defendant Furniss, as an attaching creditor, could have no better right to the goods than Titus (the vendee) had himself. * * * The process does not proceed on the ground of defeating a prior right in a third person, but on the ground of acquiring such interest in the property attached as the debtor had himself.” In Le Ray De Chaumout v. Griffin, cited in 15 Wend, at p. 144, it is said that the judgment creditors, represented by the sheriff, had no better right to the iron than the purchasers had themselves, and that the plaintiff clearly had the right to stop the goods notwithstanding the levy. To the same effect is Covell v. Hitchcock, 23 Wend. 611. I cite these cases as showing, inferentially at least, that although the sheriff, as the representative of the creditors, had no better right to the property than the purchaser had, yet that he had the same right. And also that such right, whatever it may be, is subject to levy, while in transit, and which levy can be defeated by the exercise of the right of stoppage in transitu.
*59 It seems to me, therefore, that if any acceptance of the 'goods, by Dunlop & Dutton, was necessary to complete their title, such acceptance was exercised by the sheriff in making the levy. But as I do not think, an actual acceptance was necessary I will not discuss the question. By the sale and delivery to the cartman, the plaintiffs became dispossessed of the goods ; they lost their lien upon them for the purchase money, and they cannot avail themselves of the mistake of the cartman in shipping, to regain possession, or to prevent a delivery.
I think the judgment was right and should be affirmed.
New trial granted.