SCHARFF et al., Appellants, v. MEYER et al.; UNION NATIONAL BANK OF NEW ORLEANS, Interpleader.

Division Two, March 17, 1896.

1. Interpleader: TITLE: PRACTICE. An interpleader must recover, if at all, upon the strength of his own title; he must show title to the property in himself in order to entitle him to the fund arising from its sale.

2. Carrier: DELIVERY OF GOODS: CONTRACT OF SALE. The delivery of goods by the vendor to the carrier is, as a general rule, equivalent to delivery to the purchaser, subject only to the right of stoppage *in transitu,* and especially is this so when by the terms of the contract of sale the goods are to be delivered to the carrier.

3. ———: ———: RECEIPT BY CONSIGNEE: AGENCY: BILL OF LADING. The delivery of goods to a carrier designated by the consignee for conveyance to him at a place named by the latter constitutes an actual receipt by the consignee, and the carrier is, in such case, in contemplation of law, the bailee of the consignee and not of the consignor, the latter in employing the carrier being considered the agent of the consignee; if the consignor, in such circumstances, wishes to prevent the vesting of the title in the consignee, he must by the bill of lading make the goods deliverable to his own order.

4. ———: ———: TRANSFER OF BILL OF LADING: TITLE. Where the title to property passes to the consignee upon delivery to the carrier, the transfer of the bill of lading to a third party by the consignor conveys no interest in it, even when the bills were transferable by delivery and the transfer vested in the transferee all of the consignor's rights in the property.

5. ———: BILLS OF LADING: TITLE: EVIDENCE. Bills of lading are only *prima facie* evidence as to the intention of the vendor to part with his title to the property consigned to the carrier, and extraneous evidence is admissible to show his real intent.

6. ———: SALE FOR CASH: RETENTION OF TITLE IN CONSIGNOR: WAIVER OF PAYMENT. Where goods were sold for cash and consigned to the purchaser without any intention on the part of the consignor to retain title to them until paid for, payment will be held to have been waived as a condition precedent to investing title in the consignee.

7. ———: DELIVERY TO THE PURCHASER: RETENTION OF BILLS OF LADING BY VENDOR: TITLE. Where the title to goods vests in the purchaser upon delivery to the carrier, in pursuance of the contract of purchase, the retention of the bills of lading by the vendor will not affect the title, notwithstanding the statute forbids delivery by the carrier to anyone but the person having the bill of lading, such prohibition being a question between the purchaser and the carrier.

8. ———: ———: RIGHT OF EXAMINATION OF GOODS. A sale and delivery of goods to the carrier for the purchaser, with the right of examination or of approval before payment of the purchase price, is a condition in favor of the purchaser only, which does not affect the latter's title to the goods.

9. ———: CONSIGNMENT OF GOODS TO PURCHASER: RETENTION OF TITLE IN VENDOR: TRANSFER OF BILL OF LADING. Where goods are sold and consigned to the purchaser and the right of disposition is retained in the consignor by the bill of lading, the delivery of the bill, for value, without indorsement, transfers the property in the goods included in the bill.

10. ———: AGENT OF CONSIGNOR. A carrier transporting goods the title to which is in the consignor is, while the goods are in transit, the agent of the consignor.

11. ———: BILL OF LADING: TITLE BY TRANSFER OF BILL. A bill of lading in favor of a consignee who is a purchaser may, in the absence of statutory prohibition, when retained by the consignor, be transferred by delivery for a valuable consideration.

12. ———: ———: TRANSFER BY DELIVERY: LAW MERCHANT: STATUTE, CONSTRUCTION OF. The law merchant is part of the common law, and by it bills of lading are transferable by delivery, and statutes in derogation thereof should be strictly construed.

13. ———: ———: ———: STATUTE: CONSTRUCTION. Statutes which provide that indorsement and delivery of bills of lading shall pass title should not be so construed as to mean that such bills may not be transferred by delivery for a valuable consideration.

14. ———: ———: CONTEST OF LIENORS: MARSHALING OF SECURITIES. The equitable doctrine of the marshaling of securities between lienors can not be applied to a contest between one claiming property by transfer of a bill of lading and another claiming it under attachment as the property of the transferor of the bill of lading, where the validity of the attachment lien depends on the invalidity of the transfer of the bill of lading.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Phillips, Stewart, Cunningham & Eliot* for appellants.

(1) The court erred in giving interpleader's instruction. This declares the law to be that after defendant had sold goods deliverable at their plantation, and after they had delivered them there and the boat on which they were delivered had given bills of lading which made the goods deliverable by the boat to the vendees, defendants could thereafter, without any indorsement of bills, but by mere delivery of them to the interpleaders, pass to the interpleader title to the goods. Benjamin on Sales [6 Am. Ed.], secs. 362, 380, 389, p. 349, and American note; Smith's Lead. Cas. 388; Revised Code, La. (1876), secs. 2482, 2485;

R. S. Mo. (1889), secs. 744, 745; *Bank v. St. Louis, etc., Co.*, 11 Mo. App. 333; *Erie & Pacific Dispatch v. St. Louis Cotton, etc., Co.*, 6 Mo. App. 172; *Schendler v. Smith*, 18 La. Ann. 476; *Graff v. Foster*, 67 Mo. 512; *Calhoun v. Paule*, 26 Mo. App. 174; *Meyer, etc., Drug Co. v. McMahan*, 50 Mo. App. 18. The delivery may be entirely sufficient to pass the title, as even against a stoppage *in transitu*, even when there is not a final acceptance. *Smith v. Hudson*, 6 Best & Smith, 431; *Meredith v. Meigh*, 2 El. & Bl. 364; *Hart v. Bush*, El., Bl. & El. 494; *Hunt v. Hecht*, 8 Exch. 814; *Frostberg Mining Co. v. N. E. Glass Co.*, 9 Cush. 115; *Spencer v. Hale*, 30 Vt. 314; *Gibson v. Stevens*, 8 Howard (U. S.), 384. Upon the delivery made, as in this case, the risk passed to the vendee, and the vendors could have maintained an action for goods sold and delivered, even if the goods had never reached St. Louis; and on the other hand the vendee could have sued for conversion. *Armentrout v. Railroad*, 1 Mo. App. 158; *Stafford v. Walker*, 67 Ill. 83; *Grove v. Brien*, 8 How. 438; *Lawrence v. Minturn*, 17 How. (U. S.) 100; *Leonard v. Davis*, 1 Black (U. S.), 476. The *"transitus"* ends upon actual delivery, or circumstances equivalent. *Buckley v. Farriss*, 15 Wendell, 137; *Correll v. Hitchcock*, 23 Wendell, 611. The interpleader can recover only on the strength of his own title. *Teichman & Co. v. Bank*, 27 Mo. App. 676; *Boller v. Cohen*, 42 Mo. App. 97. (2) The court erred in refusing the second instruction asked by the plaintiff, and in holding that although interpleader had full right to pay itself out of defendant's money in its hands, and although it was advised of the plaintiffs' claim and lien upon the property in controversy, it could give up the fund in its hands to which plaintiffs had no recourse, and collect its debt from the goods in question to plaintiffs' prejudice. Story, Eq. Jur. [13 Ed.], sec. 633; *Gusdorff v. Ikel-*

heimer, 75 Ala. 148; *Depeyster v. Hildreth*, 2 Barb. Ch. 109; *Pillman's Appeal*, 48 Pa. 315; *Broadbent v. Barlow*, 3 DeG., F. & J. 570; *Hamilton v. Schwehr*, 34 Md. 107; *Rice v. Harbison*, 63 N. Y. 493; *Hastings' Case*, 10 Watts, 303; *Sims v. Albea*, 72 Ga. 751; *Ingalls v. Morgan*, 10 N. Y. 178; *Glass v. Pullen*, 6 Bush, 346; *Cheeseborough v. Millard*, 1 Johns. Ch. 409; *Paxton v. Harrier*, 11 Pa. St. 312; *Parkman v. Welch*, 19 Pick. 231; *Alexander v. Welch*, 10 Ill. App. 181; *Mount v. Potts*, 23 N. J. Eq. 188; *Teaff v. Ross*, 1 Ohio St. 469; *Welch v. Beers*, 8 Allen, 151.

*T. K. Skinker* for interpleader, respondent.

(1) The delivery of the bills of lading passed title to the sugars to the interpleader, notwithstanding they were made out in the names of the St. Louis merchants as consignees, and were not indorsed by them. *First.* Because delivery without indorsement is sufficient to pass title at the law merchant. *Bank v. Homeyer*, 45 Mo. 145; *Valle v. Cerre*, 36 Mo. 575; Porter on Bills of Lading, sec. 496; *Bank v. Railroad*, 58 N. H. 203; *Weyand v. Railroad*, 75 Iowa, 578; *Holmes v. Bank*, 87 Pa. St. 525; *Bank v. Jones*, 4 N. Y. 497; *Bank v. Wright*, 48 N. Y. 1; *Allen v. Williams*, 12 Pick. 297; *Emery v. Bank*, 25 Ohio St. 360; *Jordan v. Railroad*, 31 Alb. L. J. 250. The law merchant has always prevailed in Louisiana. *Kirkman v. Hamilton*, 9 Mart. 300; *Phelps v. Bank*, 2 La. App. (McGloin) 19. *Second.* Section 2482, Louisiana Code, being a statute in affirmance of one branch of the rule established by the law merchant without negative words, the other branch remains in full force. Sedgwick on Stat. Law [2 Ed.], pp. 29, 30; *Shaw v. Railroad*, 101 U. S. 565; *Stagg v. Linenfelser*, 59 Mo. 336; *McQueen v. Manufacturing Co.*, 16 John. 4; *Baker v. Baker*, 13 Cal. 87, 95; *Brown v. Barry*, 3 Dallas, 365;

*Crowell v. Van Bibber*, 18 La. Ann. 637; *Blackman v. Wheaton*, 13 Minn. 326; *Clark v. Bank*, 47 Mo. 17; *Crittenden v. Wilson*, 5 Cow. 165; *Barden v. Crocker*, 10 Pick. 384; 1 Kent, Com., side p. 467, note b; *District Tp. v. Dubuque*, 7 Iowa, 262. It does not make indorsement necessary. *Phelps v. Bank*, 2 La. App. 19; *Bank v. Ross*, 9 Mo. App. 399; *Conrad v. Fisher*, 37 Mo. App. 367; *Skilling v. Bollman*, 73 Mo. 665; *Graham v. Ledda*, 17 La. Ann. 45; *Hall v. Ship Chieftain*, 9 La. 322; *Halsey v. Warden*, 25 Kan. 128. The rule is general that all choses in action pass by delivery only. *Boeka v. Nuella*, 28 Mo. 182; *Bennett v. Pound*, 29 Mo. 599; *Davis v. Carson*, 69 Mo. 609; *Chapman v. McIlwrath*, 77 Mo. 38; *Quigley v. Bank*, 80 Mo. 289. *Third.* There is nothing in the contracts made by Meyer & Company through Hopkins with the St. Louis merchants, which disabled Meyer & Company from negotiating these bills of lading. Some call for deliveries at St. Louis; some provide that Meyer & Company may draw for the price of the sugars with bill of lading attached; all were sales by sample, and therefore passed no title to the sugars till they were received and approved. Benjamin on Sales, secs. 594, 595, 703; *Callahan v. Morse*, 37 Mo. App. 204. (2) The fact that since the failure of the drawees to pay the drafts the interpleader has had in its hands cash deposits of defendants at times sufficient to pay its whole claim against defendants, arising out of the discount of the drafts can not defeat the interpleader's claim. *First.* Because appellants, having been at the time of the levy, general creditors only, can not invoke the equitable doctrine relating to the marshaling of securities. Adam's Equity, side p. 271; 1 Pomeroy's Eq. Juris., sec. 396; *Burgess v. Hitt*, 21 Mo. App. 313; *Coburn v. Stephens*, 36 N. E. Rep. (Ind.) 132. *Second.* By the stat-

ute of Louisiana the interpleader has no right to appropriate the current deposits of defendants to the payment of defendants' drafts held by it. La. Code, 1889, arts. 2210, 2956; *Gordon v. Muchler*, 34 La. Ann. 604; *Morgan v. Lathrop*, 12 La. Ann. 257; *Bloodworth v. Jacobs*, 2 La. Ann. 26; *Breed v. Purvis*, 7 La. Ann. 53; *Bogert v. Edgerton*, 11 La. Ann. 73; *Murdock v. Bank*, 23 La. Ann. 113; *Hancock v. Bank*, 32 La. Ann. 590. *Third.* Article 20 of the by-laws, in terms, applies only to "notes," not to bills of exchange, as some of the other by-laws do. Moreover, it is void because in conflict with the statute. *Gordon v. Muchler*, 34 La. Ann. 606; U. S. Rev. Stat., 1875, sec. 5136; *Presbyterian, etc., Fund v. Allen*, 120 Ind. 593; *Bergman v. Bldg. Ass'n*, 29 Minn. 275; *Legion of Honor v. Perry*, 140 Mass. 592; *Bullard v. Bank*, 18 Wall. 589; *State v. Curtis*, 9 Nev. 325; *Matter of Long Island Railroad*, 19 Wend. 37; *State v. Tudor*, 5 Day, 333; *State v. Williams*, 75 N. C. 134; *Harrington v. Association*, 70 Ga. 341; *Came v. Brigham*, 39 Me. 55; *Clark's Case*, 5 Coke, 64; *Moore v. Bank*, 52 Mo. 377; *Weatherby v. Society*, 76 Ala. 567; *Kent v. Mining Co.*, 78 N. Y. 182. It is immaterial that Adolph Meyer, a member of the firm, was a stockholder in the bank. His position as stockholder did not enable him to waive or do away with the statute. Nor is there anything to show that he attempted to waive the statute, or consented to the by-law. Morawetz on Corporations, secs. 491, 494, 496; *Cummings v. Webster*, 43 Me. 192; *Kent v. Mining Co.*, 78 N. Y. 159; *Brewster v. Hartley*, 37 Cal. 15; *Great Falls, etc.; Co. v. Harvey*, 45 N. H. 292. Moreover, appellants, being strangers to the Union National Bank, could not avail themselves of its by-law if it were valid. *Flint v. Pierce*, 99 Mass. 68; *Came v. Brigham*, 39 Me. 35; *Bullard v. Bank*, 18 Wall. 589; *Coyle v. Father Matthew Society*, 17 Week. Dig. 17; 31 Hun, 53; *State v. Tudor*,

5 Day, 333; *Cross v. Bank*, 1 R. I. 39·; *Reid v. Manufacturing Co.*, 40 Ga. 98; *Com. v. Turner*, 1 Cush. 493. *Fourth.* Even if the interpleader had a right to appropriate the current deposits of Meyer & Company to the payment of the St. Louis drafts, still he is under no obligation to do so, and appellants are in no position to compel him to do so. *Citizens Bank v. Carson*, 32 Mo. 191. An indorser or surety has no such right, much less a mere creditor. *Bank v. Smith*, 66 N. Y. 271; *Voss v. Bank*, 83 Ill. 599; *Martin v. Bank*, 6 Harr. & J. 235; *Bank v. Legrand*, 103 Pa. St. 309; *Marsh v. Bank*, 34 Barb. 298; *Strong v. Foster*, 17 Com. B. 201; *Duncan v. Bank*, 27 Week. Rep. & Dic. 521; *Thatcher v. Bank*, 5 Sandf. 121; *Bank v. Hanson*, 34 Neb. 455; *Fourth National v. Bank*, 68 Ill. 398.

BURGESS, J.—This is an action by attachment. Under the writ, six hundred and nineteen barrels of sugar were seized as the property of defendants. The sugar was sold under order of the court, and the proceeds arising from said sale paid into court. The Union National Bank, of New Orleans, interpleaded, claiming the fund. The controversy is between the plaintiffs as attaching creditors, who seized the sugar by attachment as the property of V. & A. Meyer & Company while on the vessel upon which it was shipped, and the interpleader who claims the fund under assignment of the drafts, and transfer of the bills of lading for the sugar. The trial was had before the court, who found for the interpleader, and plaintiffs appealed.

No question is made with respect of the pleadings, or the admission or exclusion of evidence. The facts are about as follows:

Defendants, who were merchants at the city of New Orleans, having through their broker theretofore

sold fourteen different lots of sugar, to as many different purchasers in the city of St. Louis, on the thirtieth day of November, 1890, shipped it to them in compliance with their contracts. The carrier issued to defendants bills of lading in which they were named as the shippers, and the several purchasers named as consignees.

Defendants then drew a separate draft on each of the consignees for the value of the sugar shipped to them. The drafts were drawn payable to defendants' order, and were indorsed by them. To each draft was attached the corresponding bill of lading, and on the first of December, 1890, all the drafts with the bills of lading attached, were transferred and delivered to the interpleader for their full face value, and the full aggregate value of all the sugar, being about $10,000. On presentation of the drafts to the respective drawees payment was refused, and they were not paid. The drafts are in the ordinary form of bills of exchange. They are all dated at New Orleans, December 1, 1890, are drawn by V. & A. Meyer & Company. The bills of lading were not indorsed.

The bills of lading are dated at Cora Plantation, Louisiana, November 30, 1890, and it is recited on the face of each of them that the shipment is for account of V. & A. M. & Company. They are all in the following form:

"Received in good order from Cora Plantation on board the steamer City of St. Louis * *. * to be delivered without delay, unless unavoidably prevented, on the levee at St. Louis unto consignee as below * * *.

"Freight at 15c per 100 lbs.

| MARKS. | ARTICLES. | CONSIGNEE. | WHOSE ACCOUNT. | WEIGHTS. |
|--------|-----------|------------|----------------|----------|
| Nina Y. C., No. 15. | Fifty-three barrels Y. C. sugar. | Fink & Nasse, St. Louis. | V. & A. M. & Company. | 17,339. |

There are fourteen of the bills of lading, each naming as consignee one of the concerns against whom the drafts were drawn.

Along with each of the bills of lading is a certificate dated at Cora Plantation, November 29, 1890, showing the weight of each barrel, and the gross weight and net weight of each lot. There was also pinned to each of the bills of lading a slip of paper on which were written the words: "Allow parties to have B–L and examine goods."

It appears that on the first of December Adolph Meyer, a member of the firm of V. & A. Meyer & Company, took these fourteen drafts, with the bills of lading and other papers attached, into the Union National Bank and requested a discount; that Chalaron, the cashier, accepted them at the current rate of discount for St. Louis exchange, one fourth of one per cent (or $24.29 in the aggregate), and caused the net proceeds, $9,719.91, to be placed to the credit of Meyer & Company in their account current; that the bank paid checks of Meyer & Company on their account current to the amount that day of $39,772.21, the next day $70,277.27, and each succeeding day for greater or less sums; that from the day when the fourteen drafts above mentioned were delivered to the bank up to and including the day when they were dishonored at St. Louis and the Union National Bank

was notified, the defendants had on deposit in the bank and to their credit more than enough money to pay all these drafts; that after that time there were, up to December 25, of that year, daily balances to defendants' credit, on most days more than sufficient, though on six of those days not sufficient, to pay all the drafts.

When the deposition of Mr. Chalaron, was taken on February 5, 1891, there was still more than enough money on deposit to the credit of the defendants to pay all the drafts; that this discount was made in the usual and ordinary course of business, and on the faith of the bills of lading and certificates of weight, and not on the personal credit of Meyer & Company; that the transaction was an out and out purchase, and that the drafts were not taken for collection for account of Meyer & Company.

It also appears that the drafts were received by the St. Louis National Bank, from the Union National Bank and with the other papers attached presented to the several drawees for payment, and payment refused.

The contracts in pursuance of which the shipments were made, are all dated at St. Louis and call for Y. C. (yellow clarified). Their terms are as follows:

"1.  F. Mitchell & Bro.: Price 5 cents delivered on the levee here; to be drawn for, bill of lading attached; sugar to be received before payment of draft.

"2.  Wulfing, Dieckriede & Co.: Price 5 cents delivered here; to be drawn for subject to examination of sugar before payment.

"3.  Adolph Moll: Price 5 1-8 delivered here on the levee by next Saturday's boat from New Orleans.

"4.   O. H. Peckham Candy Co.: Price 5 cents delivered here; to be drawn for bill of lading attached; bill of lading to be surrendered by bank so sugar may be received in the usual way.

· "5.   Goebel, Wetterau & Co.: Price 4 7-8 sold at plantation; to be shipped Anchor Line and insured; to be drawn for bill of lading attached; sugar to be examined and received in the usual way before payment.

"6.   Dodge & Seward: Price 4 7-8, f. o. b. plantation; ship Anchor Line and insure; to be drawn for bill of lading attached; subject to approval before payment.

"7.   Alkire Grocery Co.: Price 4 7-8 f. o. b. plantation; ship Anchor Line and insure; to be drawn for bill of lading attached; sugar to be accepted before payment of draft.

"8.   Scudder, Miltenberger, Reinhart & Co.: Price 4 7-8, f. o. b. plantation; ship Anchor Line; no insurance; to be drawn for bill of lading attached; sugar to be accepted before payment.

"9.   Gildehaus, Wulfing & Co.: Price 4 7-8, f. o. b. plantation; ship Anchor Line and insure; to be drawn for subject to approval of goods before payment.

"10.   Greely-Burnham Grocer Co.: Price 4 7-8 sold at plantation; ship Anchor Line and insure to be drawn for bill of lading attached; bill of lading to be surrendered by bank so the sugar may be received in the usual way.

"11.   J. H. Kaiser & Co.: The same as in No. 10.

"12.   Adam Roth Grocery Co.: The same as in No. 10.

"13.   Goddard-Peck Grocery Co.: Price 4 7-8, f. o. b. plantation; ship Anchor Line; no insurance; cash on receipt of sugar.

"14. Fink & Nasse: 4 7-8 per pound, f. o. b. 12 1-2 cents freight to St. Louis; cash on arrival."

It also appears that some of the sugars were sold subject to approval by the purchasers before payment.

Plaintiffs gave in evidence sections 2482, 2485, Voorhies' Revised Statutes of Louisiana, 1876, which read as follows.

"Sec. 2482. Cotton press receipts given for any goods, wares, merchandise, grain, flour or other produce or commodity stored or deposited with any cotton press, wharfinger, or other person, or any bill of lading given by any forwarder, boat, vessel, railroad, transportation or transfer company, may be transferred by indorsement therein, and any person to whom the same may be transferred shall be deemed and taken to be the owner of the goods, wares, merchandise, grain, flour, or other produce or commodity therein specified, so far as to give validity to any pledge, lien, or transfer made or created by such person or persons, but no property shall be delivered except on surrender and cancellation of said original receipt or bill of lading with the indorsement of such delivery thereon; in case of partial delivery all cotton press receipts or bills of lading, however, which shall have the words 'not negotiable' plainly written or stamped on the face thereof, shall be exempt from the provisions of this section."

"Sec. 2485. All receipts, bills of lading, vouchers, or other documents, issued by any cotton press owner or lessee, wharfinger, forwarder, or other person, boat, vessel, railroad, transportation or transfer company, as by this act provided, shall be negotiable by indorsement in blank or by special indorsement, in the same manner, and to the same extent, as bills of exchange and promissory notes now are."

It further appears that the defendants, V. & A. Meyer & Company, were and for some time before these transactions had been and thereafter remained depositors in the Union National Bank, and that one of the firm, Adolph Meyer, who transacted the business of the firm with the bank, then was and for some time had been a stockholder and a director and the vice-president of that bank.

The following articles of the by-laws of the Union National Bank were also read in evidence:

"Art. 20. All notes discounted by the bank, that are not taken up before the closing of the bank, on the last day of grace, shall be charged to the account of the parties to the same, provided there are funds in the bank to the credit of such person or persons."

"Art. 8. If any bill or note belonging to this corporation shall not be paid before the closing of the bank, on the last day of grace, such bill or note shall be forthwith protested; and while such bill or note remains unpaid, no discount or accommodation shall be granted, to any drawer, acceptor, or indorser of the same. No note or bill held by this bank as collateral security, shall be discounted by the bank until the note or bill for which it is pledged shall be paid."

"Art. 16. The bank shall take charge of the cash, notes, or bills of exchange of such persons who may place them there, as the directors or officers may think proper, free of expense and shall keep them there subject to their order.    *    *    *"

"Art. 21. All notes discounted to meet the payment of any note or bill due to the bank, shall not be drawn for nor applied to any other purpose whatever."

Interpleader gave in evidence the following statutes of the state of Louisiana (Voorhies' Rev. Civil Code, 1889):

"Art. 2210. Compensation takes place, whatever be the causes of either of the debts, except in case:

"1. Of a demand of restitution of a thing of which the owner has been unjustly deprived.

"2. Of a demand of restitution of a deposit and of a loan for use.

"3. Of a debt which has, for its cause, ailments declared not liable to seizure."

Art. 2956. "The depositary can not withhold the thing deposited on pretense of a debt due to him from the depositor on an account distinct from the deposit, or by way of offset. But he may retain the deposit until his advances are repaid, as well as any other claims which he may have arising from the deposit."

Chalaron, the cashier of the interpleader, testified that section 20 of the by-laws was considered a dead letter; that the decisions of the courts of Louisiana make it so, and that the bank has sustained loss by reason of its inability to enforce it. Kohn, president of the bank, testified substantially to the same effect.

The court, at the instance of the interpleader, gave the following declaration of law:

"The court declares the law to be, that if the court shall find from the evidence that the Union National Bank in good faith bought from Meyer & Company the draft read in evidence, with the bills of lading attached, and relying upon the security of said bills of lading placed to the credit of said Meyer & Company, in their account current, the price paid for said drafts being the face value of the drafts less a small sum retained by the bank for interest and exchange, then the said bank acquired title to the sugars specified in said bills of lading, and the finding and judgment must be for the interpleader."

The court, at the instance of the plaintiffs, gave the following declaration of law:

"If the court, sitting as a jury, believes from the evidence that the drafts put in evidence were not sold *bona fide* by V. & A. Meyer & Company to the Union National Bank of New Orleans, but were understood between said firm and said bank to be placed in the hands of said bank merely for collection by or through said bank as the agent of said firm, and that the bills of lading put in evidence were merely sent along with said drafts for purposes of enabling said bank, or its St. Louis correspondents, to collect said drafts for the benefit of said firm, then you will find for the plaintiffs."

The plaintiffs requested the court to give the following declaration of law, which was refused:

"If the court, sitting as a jury, believes from the evidence that at the time when the interpleader, the Union National Bank, was advised of the dishonor at St. Louis of the drafts put in evidence, the said bank had on deposit to the credit of the firm of V. & A. Meyer & Company, money sufficient to pay said drafts, and that according to the laws of Louisiana and the by-laws of said bank, in force at that time, said bank had the right to pay said drafts out of said deposit; and if the court, sitting as a jury, further believes that said bank was at that time advised of the plaintiff's claim and attachment upon the sugars covered by the bills of lading put in evidence, then in such case it was the duty of said bank to the plaintiffs to pay said drafts out of said deposit, and your verdict must be for the plaintiffs."

Plaintiff's first contention is that the title to the sugar passed, when delivered on board the boat at the Cora Plantation, Louisiana, to the vendees, under the original contracts of sale; that the bills of lading were necessarily made to the vendees as consignees; that they were not assignable or negotiable without indorsement;

that they were not indorsed, and the vendors were without authority to either indorse or negotiate them; and that by merely attaching them to drafts for which credits were received, the vendors neither did nor could transfer title to the sugar, and therefore the sugar and all proceeds thereof at the time of the attachment, did not and do not belong to the interpleader, and that as the evidence shows that the title is not in the interpleader, it can not recover. Upon the other hand the interpleader contends that the delivery of the bills of lading to it passed to it the title to the sugar notwithstanding they were made out in the name of the St. Louis merchants as consignees, and were not indorsed by them.

While plaintiffs occupy the position of claiming that the sugar in question was not defendants' when the interpleader claims to have acquired it by transfer of the bills of lading on the first day of December, 1890, but was defendants' when subsequently attached by them, it needs no citation of authority to show that the interpleader must recover, if at all, upon the strength of his own title; that is, the interpleader must show title to the sugar, otherwise it is not entitled to the fund arising from its sale.

As a general rule the delivery of goods by the vendor to the carrier or master of a vessel, when the goods are to be sent in that way, is equivalent to delivery to the purchaser, subject only to the right of stoppage *in transitu*. 2 Kent's Com. *499; *State v. Wingfield*, 115 Mo. 428; *Kerwin v. Doran*, 29 Mo. App. 397; *Garbracht v. Commonwealth*, 96 Pa. St. 449; *Dunn v. State*, 8 S. E. Rep. 806. Especially is this so when by the terms of the contract of sale the goods are to be delivered to the carrier.

By the terms of the contracts in the case in hand all sugar except lots one, two, three, and four were to

be delivered on board of boat at Cora Plantation, and all sugars delivered to the carrier in pursuance of said contracts were in legal contemplation delivered to the consignees, and *prima facie* the title vested in them immediately on such delivery. It is so held in *Hening v. Powell*, 33 Mo. 468; *Armentrout v. Railroad*, 1 Mo. App. 158, and those cases are in accord with the great weight of authority.

"It is well settled that the delivery of goods to a common carrier, *a fortiori* to one specially designated by the purchaser for conveyance to him or to a place designated by him, constitutes an actual receipt by the purchaser. In such cases the carrier is, in contemplation of law, the bailee of the person *to* whom, not *by* whom, the goods are sent, the latter in employing the carrier being considered as an agent of the former for that purpose." 1 Benjamin on Sales [Kerr's Ed.], sec. 203, p. *155. If, under such circumstances, the consignor wishes to prevent the title from vesting in the consignee, he must, by bill of lading, make the goods deliverable to his own order. 1 Benjamin on Sales, sec. 455, p. 348.

If, then, the title to the sugar passed to the consignees when delivered on board the vessel at Cora Plantation, nothing passed to the interpleader by the transfer of the bills of lading, even admitting that they were transferable by delivery, and vested in the transferee all of defendants' interest in the property. It is true this was matter of intention on the part of the vendors of the sugar with respect of which the bills of lading are *prima facie* evidence only, and extraneous evidence was permissible for the purpose of showing the real intent of the parties. But as to these sugars, notwithstanding lots five, six, seven, eight, and nine were sold subject to approval by the consignees before payment, when the facts that they were sold at four

and seven eighths cents per pound, while other sugars sent by the same shipment were to be delivered on the levee in the city of St. Louis, at a less price; that they were weighed, marked with consignees' names, put on board the vessel in accordance with the contract, and the bills of lading made out to the consignees respectively, are taken in connection with all the other evidence in the case, it is almost conclusive that the title to these sugars vested in the consignees when shipped.

But it is insisted that the sales were for cash, and that the property remained in the vendors until paid for. In answer to this position it is sufficient to say that payment was waived as a condition precedent to investing the title in the consignees when the goods were shipped to them without any intention, in so far as appears from the record, on the part of the consignors to retain title to them until they were paid for. Tiedeman on Sales, secs. 85, 207, and authorities cited.

In *Emery's Sons v. Bank*, 25 Ohio St. 360, it is said: "If the bill of lading shows that the consignment was made for the benefit of the consignor or his order, it is very strong proof of his intention to reserve the *jus disponendi*. And on the other hand, if the bill of lading shows that the shipment is made for the benefit of the consignee, it is almost decisive of the consignor's intention to part with the ownership of the property."

Again, in the same case, it is said: "A consignor who has reserved the *jus disponendi*, may effectuate a sale or pledge of the property consigned, by *delivery* of the bill of sale to the purchaser or *pledgee*, as completely as if the property were, in fact, delivered. If such transfer of the bill of lading be made after the property has passed into the actual possession of the consignee, the transferee of the bill takes it subject to any right or lien which the consignee may have

acquired by reason of his possession.   But if the bill of lading be transferred by way of sale or pledge to a third person, before the property comes into the possession of the consignee, the consignee takes the property subject to any right which the transferee of the bill may have acquired by the symbolic delivery of the property to him." See, also, *Hobart v. Littlefield*, 13 R. I. 341.

In passing upon the transferability of bills of lading by delivery in *Allen v. Williams*, 12 Pick. 297, SHAW, C. J., in delivering the opinion of the court, said: "Even a sale or pledge of the property without a formal bill of lading, by the shipper, would operate as a good assignment of the property, and the delivery of an informal or unindorsed bill of lading, or other documentary evidence of the shipper's property, would be a good symbolical delivery, so as to vest the property in the plaintiffs." That case was followed with approval in *Bank v. Dearborn*, 115 Mass. 219. In each of those cases the consignor had simply taken the carrier's receipt for the goods and it was held that the transfer of the receipts by delivery without indorsement, was a symbolical delivery of the goods covered by the receipts, and transferred to the transferee all interest the consignors had in the goods at the time of the transfers of the receipts.

In *Bank v. Crocker*, 111 Mass. 163, it was held that a *bill of lading* transferred by delivery passed to the transferee all the interest of the pledgor or consignor in the goods covered by the bill. A similar ruling was made in *Bank v. Bangs*, 102 Mass. 291; *Railroad v. Phillips*, 60 Ill. 190; *Phelps v. Bank*, 2 La. App. (McGloin) 19.

If the title to these sugars vested in the purchasers when delivered on board of the vessel in pursuance of the contracts of purchase, then the fact that the bills

were retained by the vendors could not and did not affect the title to property which had already passed from them, and it matters not that both by the statutes of Louisiana and Missouri the carrier is forbidden to deliver goods to anyone but the person having the bill of lading. This is a question between purchasers of the goods and the carrier.

The right to examine the sugar by the consignee in the one instance and of approval in others before payment of the purchase price, was not a condition in favor of the vendors or of which they could avail themselves, but was a condition in favor of the purchasers only. The vendors had done all under the circumstances they could do, or that the law required to complete the sales on their part.

When goods are consigned, and the right of disposition is retained in the consignors by the bill of lading, then the delivery of the bill without indorsement for value transfers the property in the goods included in the bill. Such is the legal effect of a bill of lading for goods consigned to a factor for sale on account of the consignor, as in such case there is no sale of the property before the transfer of the bill. *Bank v. Homeyer*, 45 Mo. 145; *Valle v. Cerre's Adm'r*, 36 Mo. 576; *Holmes v. Bank*, 87 Pa. St. 525; *Bank v. Jones*, 4 N. Y. 497; *Bank v. Wright*, 48 N. Y. 1; *Allen v. Williams*, 12 Pick. 297; *Jordan v. Pennsylvania Co.*, 31 Alb. L. J. 250; *Emery's Sons v. Bank*, 25 Ohio St., *supra*.

The same rule applies in case of sale, if the right to dispose of the property is retained in the consignor by the bill of lading. *Weyand v. Railroad*, 75 Iowa, 578.

Under the contracts with respect to lots numbered one, three, two, and four, the first two lots were to be delivered on the levee in St. Louis, and the last two in

said city, no other place being named.   Notwithstanding the bills of lading for these sugars were also made in favor of the respective consignees, the contracts not only show that they were to be delivered in St. Louis, but also show that they were sold at about one cent on the pound in advance of other sugars, shipped at the same time under contracts to be delivered on the vessel, which tended to show, aside from other facts and circumstances in evidence, that the consignors retained title thereto and that they were shipped at their risk. If so, while in transit the carrier was their agent. 2 Benjamin on Sales [Kerr's Ed.], sec. 925; *Dunlop v. Lambert*, 6 Cl. & F. 600.   This, however, is a matter depending largely upon the intention of the consignors, and a question for the consideration of the court or jury.   A bill of lading is understood to be a symbol of the property for which it is given, and when in favor of the consignor, his agent or factor, is transferable by delivery without indorsement for value, and when so transferred carries with it the property in the goods which it covers.   Authorities *supra*.

This is according to the law merchant which prevails in the state of Louisiana as in the state of Missouri.   *Phelps v. Bank*, 2 La. App. (McGloin), 19. By it the bills of lading are the representatives of the property for which they were given, and their delivery to the interpleader a symbolical transfer *to it of whatever title, if any*, the consignors had in the sugars at the time, subject, however, to any legal or equitable defenses the consignees may have had as against the consignors.

And if a bill of lading in favor of the consignee, although such consignee be the agent or factor of the consignor, may be transferred by the consignor by delivery for a valuable consideration, we can conceive of

no reason, in the absence of statutory inhibition, why such bill in favor of a consignee who is a purchaser, when retained by the consignor, may not be transferred in the same way. We can see no difference in principle. If extraneous evidence is admissible to show the real intent of the consignor as to the retention of the title of the goods covered by the bill in the one case, it must be in the other.

Section 2482, Louisiana Code, does not, as supposed, provide that the only means of the transfer of a bill of lading shall be by indorsement. The law merchant is part of the common law; by it bills of lading are transferable by delivery, and statutes in derogation thereof should be strictly construed. *Crowell v. Van-Bibber*, 18 La. Ann. 637. Therefore the statutes of the state which provide that indorsement and delivery of bills of lading shall pass title, should not be so construed as to mean that such bills may not be transferred by delivery for a valuable consideration. Our conclusion is that the bills of lading were transferable by delivery subject to the conditions hereinbefore stated.

It is further contended by plaintiffs that the "interpleader is at best in the position of a creditor holding for its security two separate funds, on one of which only plaintiffs have a claim. And so, if the defendants had the right to ship, and had shipped, the goods to their own order, and had taken bills of lading accordingly, thus reserving to themselves the *jus disponendi*; and if they had drawn drafts against the bills of lading, and had discounted the drafts, with the bills attached, thus giving the interpleader a lien on the goods, still, when interpleader received notice of the plaintiffs' claim on the goods, it held in its hands money of defendants which it had the right to apply to payment of the dishonored drafts, and it was bound so to apply it. The interpleader, under such circum-

stances, can not touch the property on which the plaintiffs have a lien until it has exhausted the other fund on which plaintiffs have no lien;" that the bank did not obtain absolute title to the goods, and will hold if it gets the fund, in trust for Meyer & Company; and as such trustee or bailee the bank is subject to all equitable rules in its treatment of its trust and its relations to its beneficiary.

The rule in case one lienor has a lien on two different funds for a debt and another lienor has a lien on one of the funds only for a different debt is announced by Mr. Story in his work on Equity Jurisprudence [13 Ed.], volume 1, section 633, as follows: "The general principle is, that if one party has a lien on, or interest in, two funds for a debt, and another party has a lien on, or interest in, one only of the funds for another debt; the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon the rights or operate to the prejudice of the party entitled to the double fund."

But it does not seem as if plaintiffs are in position to invoke the aid of this equitable doctrine. The fact that they have attached the sugars and have obtained a judgment against the defendants, by publication only, subjecting the sugars to their demand, certainly does not confer upon them any such right. Interpleader claims the sugars by reason of the transfers of the bills of lading, while plaintiffs claim them under attachment levied upon them as the property of defendants. If they were transferred by the bills of lading by defendants to interpleader, then they were not subject to attachment as the property of defendants, and interpleader must recover in this action; upon the

other hand, if they were not thus transferred the result must be in favor of plaintiffs.   There can be no such thing as a lien on the sugars under the circumstances in this case in favor of both the interpleader and plaintiffs.   Moreover, plaintiffs are only general creditors, having no lien on the property save by attachment, and will hold the proceeds arising from the sale of the property except that portion, if any, interpleader can show it was the owner of at the time of its seizure under the attachment writ.   It would therefore seem to logically follow that plaintiffs are in no position to ask that interpleader be first required to apply any amount in interpleader bank to the credit of defendants to the payment of their indebtedness to interpleader, before being permitted to recover in this action.

The declaration of law given on the part of interpleader is not in accord with the views herein expressed, and is, we think, erroneous.

The judgment is reversed and the cause remanded to be tried in accordance with this opinion.   GANTT, P. J., and SHERWOOD, J., concur.