AUSTIN & ROWLEY COLD STORAGE COMPANY, a Corporation, Appellant, v. PEYCKE BROTHERS COMMISSION COMPANY, a Corporation, Respondent.

Kansas City Court of Appeals, March 2, 1914.

1. PLEADING: Petition in Three Counts. A petition, stated in three counts, which alleges a certain contract, and sets up that the contract was that a carload of pears was sold and the title passed at point of shipment by reason of a certain trade custom, which is pleaded in all three counts, is but a statement in different language of the same cause of action in all three counts. And when that is the case the court does not err in submitting it upon one count and in refusing to submit the other two.

2. ———: ———: Trade Custom. A petition which alleges a certain trade custom in all three counts as the basis for the construction of a contract must prove the existence of that custom or fail especially where its conceded action is contrary to its claim with regard to the contract aside from the alleged trade custom.

178 Mo. App. 15

3. **SALES: Vendor's Lien: Passing of Title.** When a contract of sale has been made and the intention of the parties is that the title to the property sold shall pass immediately, the vendor nevertheless has a right to retain possession until the price is paid and such insistence is not inconsistent with the fact that the title has passed. But the fact that the title did pass must be first established or admitted.

4. ———: ———: ———: **Shipping Goods to Shipper's Order.** When one ships goods to one's own order, the title to the goods is thereby retained in the shipper, unless a contrary intention is shown to have existed in the minds of the parties. In this case that intention could only be shown by a custom or trade usage and as that failed, the title was not shown to have passed.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*Ellis, Cook & Barnett* for appellant.

*Haff, Meservey, German & Michaels* for respondent   .

TRIMBLE, J.—Plaintiff is engaged in the fruit and produce business and located at Medina, New York. Defendant is in the same business and located at Kansas City, Mo.

On October 9 and 10, 1907, by means of an interchange of telegrams, a contract was entered into by which plaintiff agreed to sell defendant a carload of green Bartlett pears, first class quality.

Plaintiff loaded the pears in a car on the tracks at Medina on October 12th and wired defendant the number of the car and its routing. The bill of lading issued for said car was "to shipper's order." And plaintiff, upon starting the car, endorsed the bill of lading in blank and attached thereto a sight draft on defendant for the amount due and deposited the same in a bank at Medina. The bank forwarded the draft

and bill of lading in the ordiary banking channels, to Kansas City with instructions to notify defendant and to surrender said bill of lading upon payment of said draft.

For some reason, not shown by the record, the car was delayed in transportation and did not arrive in Kansas City until October 24th. Before paying the draft and obtaining possession of the bill of lading which would authorize the delivery of the car to defendant, the latter demanded the right to inpect the fruit upon the car's first arrival, but inspection was denied by the railroad. However, two days later inspection was granted, and defendant found the pears to be in bad condition—too ripe and fast rotting. Defendant thereupon refused to pay said draft or to accept and pay for said pears. Plaintiff then disposed of them as best it could and credited defendant with the amount realized and brought this suit for the balance due on the contract.

The controversy is over the question whether title to and possession of the pears passed to and vested in defendant when loaded in the car on the tracks at Medina, or whether such title and possession remained in plaintiff until accepted by defendant in Kansas City. If the pears became defendant's at Medina, then the subsequent transportation was at defendant's risk and it must suffer the loss occasioned by the damage to the perishable fruit by reason of the delay.

Plaintiff's claim that the title to the pears passed to defendant at Medina is based on the fact that its first telegram read "Offer car green Bartletts, baskets two-forty, kegs, seventy-five, our *tracks*."

The amended petition, on which the case was tried, was in three counts. The first alleged that under a trade custom and law of New York and established at Medina, which was general, certain, uniform, notorious and well known to the fruit and produce trade throughout the country, the telegram created a contract by

which plaintiff agreed to sell and defendant agreed to buy one car of Bartlett pears on board the car at Medina to be loaded by plaintiff and consigned to its own order with sight draft on defendant for the purchase price attached to the bill of lading to secure payment thereof and all risks incident to the transportation of said pears to be on defendant after delivery of same to carrier at point of shipment.

The second count was the same as the first except that the custom creating said contract was a certain and definite custom at Medina and vicinity and known to defendant.

The third count set up the same facts as stated in the first and second counts. It alleged that according to the usages, customs and trade terms of the fruit trade existing at Medina and throughout the United States, and by virtue of the exchange of said telegrams and usages, plaintiff sold and defendant bought said car of pears at Medina with the privilege in plaintiff of consigning said car to itself at Kansas City with sight draft on defendant and bill of lading endorsed by plaintiff to secure the purchase price, and all risks of transportation to be on defendant.

Plaintiff earnestly contends that there is a vital difference between the three counts of the petition, especially that the third count is essentially different from the other two. We have studied them carefully and repeatedly each by itself and also in connection with plaintiff's explanations and comments thereon, and if there is any difference between them in legal effect we have been unable to discover it.

The *first* count alleges a custom or usage of the fruit and produce trade, existing in the state of New York and established at Medina, and further pleads that the custom "was general, certain, uniform and notorious, and well known to the fruit and produce trade throughout the country."

The second count alleges a custom of the state of New York and established at Medina, and alleges that the said custom "was a certain and definite custom at that place and known to the defendant herein."

The *third* count alleges a custom throughout the United States and existing at Medina, but it is not alleged whether respondent knew of it or not. It then says "by virtue of said telegrams and said usages, customs and trade terms," plaintiff sold the car at Medina, and had the privilege of retaining possession and title thereof and thereto by keeping the bill of lading in its name and under its control to secure the purchase price. If plaintiff had such privilege it was one which arose solely by reason of custom and trade usage which was known to defendant, or was so general and universal in its use and acceptation that defendant, as one engaged in that business, must be presumed to have known it, and therefore it entered into and formed a part of the contract the same as if formally expressed therein. So that the three counts do stand upon a custom or trade usage and are not dissimilar in legal effect, however much the third count may differ from the other two in plaintiff's mental conception thereof. The three counts state the same cause of action based upon the same legal theory and right, their only difference being in the language used.

Consequently, the court did not err in submitting the case upon the first count of the petition, and in refusing plaintiff's instructions based upon, or rather asking a verdict under, the second and third counts. The question was submitted to the jury whether such a custom or trade usage existed whereby plaintiff could retain title and the right to the possession of the fruit until it reached Kansas City and was paid for, and yet claim that the car belonged to defendant the moment it was loaded at Medina and accepted by the carrier for shipment. And the jury found for defendant. We

are, therefore, bound to accept and abide by that finding.

But plaintiff contends that the third count is based on the theory of a vendor's lien, by which we suppose he means that plaintiff had the right, as a matter of law and regardless of any custom or usage, to bill the car to its own order and still claim that the title and possession passed at Medina; that plaintiff had a vendor's lien on the fruit for its purchase price and this billing of it to plaintiff's order was a mere method of securing that vendor's lien. It may be remarked in passing that nothing is said in the third count about a vendor's lien. And if the plaintiff had the right to bill the car as it did in order to protect its vendor's lien regardless of a custom why plead the custom in the third count? It may have been necessary to plead certain customs to show the meaning of the cryptic terms in the telegram, but certainly the custom pleaded was not limited to that. The third count plainly said that "by virtue of said telegrams and said usages, customs and trade terms, plaintiff contracted to sell . . . a car of Bartlett pears . . . at Medina . . . with the privilege in plaintiff" of consigning the car to itself and retaining possession and control of the bill of lading "to secure payment thereof by defendant and on payment thereof the same to be surrendered to defendant, all risks incident to transportation of said pears to be upon defendant after delivery of said pears to and acceptance by carrier of same at point of shipment."

It may be true that *if the title has passed* and nothing remains but to make delivery of possession, the vendor may have a right to retain *possession* until the price is paid and thus compel payment. And the vendor's insistence is not inconsistent with his claim that the *title* has already passed. In such case the fact that the title *did* pass must be admitted or must be established by other evidence than the mere retention of the

property. But that question is the very one in dispute here. When did the title pass? At Medina? Or was it to pass at Kansas City?

In order for plaintiff to assert a vendor's lien under the third count, or under any count, he must first show that he has parted with the title. A vendor's lien is a mere incumbrance or burden on the title. A person cannot have a lien on a thing and at the same time have the title to that thing for necessarily the whole comprehends and swallows up the lesser. The lien cannot come into existence until the title passes.

Now, plaintiff by billing the pears to its own order retained the title thereto. [Hunter Bros. v. Stanley, 132 Mo. App. 308.] In Scharff v. Meyer, 133 Mo. 428, l. c. 445, Judge Burgess quotes Benjamin on Sales to the effect that delivery of goods to a common carrier is a delivery to the purchaser and then says, "If, under such circumstances, the consignor wishes to prevent the title from vesting in the consignee, he must, by bill of lading, make the goods deliverable to his own order."

In Kentucky Refining Company v. Globe Refining Company, 42 L. R. A. 353, it is held that one who consigns property to his own order, with directions to notify the purchaser thereof, and sends a draft with bill of lading attached, requiring payment thereof before the bill of lading shall be delivered, does not thereby part with title to the property.

In 1 Mechem on Sales, Sec. 774 it is said: "Where the seller takes a bill of lading which expressly stipulates that the goods are to be delivered, at the point of destination, to himself or agent, or to his order or assigns, there is the clearest possible evidence upon the face of the transaction that, notwithstanding such an appropriation of the goods as might have been sufficient to transfer the title to the buyer, the seller has determined to prevent this result by keeping the goods within his own control."

The same author at page 654, Sec. 779 says: "Equally significant of the intention is the case in which the bill of lading, taken to the order of the seller, is indorsed by him and attached to a draft upon the purchaser for the price; and the draft is then delivered to a bank for collection, or is discounted by the bank in reliance upon the security afforded by the bill of lading. In such a case presumtively no title passes to the purchaser until by payment of the draft he has duly obtained the possession of the bill of lading, although the goods have been sent in the buyer's own ship."

If it be contended that the phrase "our tracks" in the telegram first sent shows that the title was to pass at Medina, the answer is that such phrase did not mean solely and only that. It may have meant a number of other things. It did not so clearly and unequivocally state that as one of the terms of the contract as to override every other intention manifested by the terms of the bill of lading. So that although the question of when the title passes is a question of intention, does not the subsequent bill of lading express an intention to retain the title more fully and definitely than the phrase "our tracks" in the telegram? It is only in the light of an alleged and pleaded custom that such intention can be shown in this case. Because there was no evidence of a contrary intention. The parties never met, did not know each other and their only communications were the letters and telegrams in evidence. The phrase in the first telegram, therefore, did not foreclose the question of when the title was to pass, and the question of when it was to pass remained a question of intention which was for the jury to pass on. Under the pleadings, that intention arose, if at all, by reason of a custom and usage. But if it did not, and the question of intention should have been submitted regardless of the custom or usage, nevertheless the instructions based on said third count

should not have left out the question of the intention. As they left this element out they were properly refused even if plaintiff is correct in its insistence that the third count should have been submitted on the theory that the title passed at Medina and the method of shipment was the mere enforcement of a vendor's lien. Nothing is said therein about a lien or of an intention regarding either the title or the lien.

We are of the opinion that there was but one cause of action in all three counts, which made plaintiff's right to recover depend on the existence of a custom. But the jury has found that it did not exist.

Therefore, the judgment must be affirmed. It is so ordered. All concur.