## CORBY SUPPLY COMPANY, Respondent, v. JOHN W. THOMPSON, Appellant.

**St. Louis Court of Appeals, December 8, 1914.**

1. **SALES: Delivery to Carrier.** Where goods are sold f. o. b. cars at point of shipment, a delivery to the carrier selected by the vendee to receive them is a delivery to the agent of the vendee.

2. ————: ————: **Bill of Lading.** A bill of lading represents the goods for which it is given, and its delivery passes the title as effectually as would an actual delivery of the goods.

3. ————: ————: ————. Where goods, which had been sold f. o. b. cars at point of shipment, were delivered to the carrier selected by the vendee, after the time for making the shipment had expired, an acceptance of the bill of lading for the goods by the vendee, with full knowledge of the delay, operated as an acceptance of the goods, then in the possession of the carrier as his agent, and prevented his rescinding the sale on account of the delay.

4. ————: **Delay in Delivery: Remedies of Vendee.** Where time of performance is made an essential element of a contract of sale, it is regarded as being in the nature of a warranty that the goods will be delivered within the time stipulated, and in case of failure to so deliver, the vendee has the option, either to rescind the contract and refuse to accept the goods, or to receive them and recover from the vendor the damages sustained on account of the delay.

Appeal from St. Louis City Circuit Court.—*Hon. W. B. Homer*, Judge.

AFFIRMED.

*Marshall & Henderson* for appellant.

*Davis Biggs* for respondent.

(1) The fact that the defendant unloaded the pipe and took same into his possession when it arrived at its destination, and when the defendant had full

knowledge of the delay, if any, in the delivery to the railroad and the delay in shipment, constituted a complete acceptance of the pipe, even conceding that plaintiff was in default in making shipment. And under the law of this State there only remained to the defendant the right to recoup by counterclaim for any damage he may have suffered by the delay. Wall v. Ice & Cold Storage Co., 112 Mo. App. 659; Johnson v. Baltimore Glass Co., 7 L. R. A. (N. S.) 1115. (2) The delivery of the bill of lading was a delivery of the goods themselves and transferred title to the defendant. Scharff v. Meyer, 133 Mo. 428; Railroad v. McLiney, 32 Mo. App. 166; Zinc Company v. Lead Co., 102 Mo. App. 158; Benjamin on Sales, sec. 813. (3) If defendant wished to rescind it was incumbent upon him to surrender to plaintiff the bills of lading. Kessler v. Perrong, 22 Pa. Sup. Ct. 579; Kilpatrick v. Kansas City, 86 Mo. 341. (4) If the defendant desired to rescind on account of the delay in delivery, it was incumbent upon him to exercise his right within a reasonable time, and his failure to object to the delay in shipment when he had knowledge of such delay constituted a waiver of his right to rescind. 35 Cyc. 184; Lefforts v. Wells, 167 Mass. 531; Mecham on Sales, 1368. (5) The words "immediate shipment" as used in the letter of the plaintiff confirming the order, means within a reasonable time, having due regard to the nature and circumstances of the case. Fidelity & Deposit Co. v. Courtney, 103 Fed. 599; McFarland v. Association, 124 Mo. 204; Bowser v. Atkinson, 161 Mo. App. 456; Smith Co. v. Langer, 46 Atl. 623; Wardall v. Horne, 81 N. W. 591. (6) The acceptance of the bill of lading and the retention of same after the taking of the goods from the railroad is a sufficient delivery to overcome the defense of the Statute of Frauds. If not, the letter of defendant to plaintiff, being Exhibit "E," in which the defendant sets out the terms of the agreement, was a suffi-

cient memoranda required by the statute. Cash v.
Clark, 61 Mo. App. 636; Cunningham v. Williams, 43
Mo. App. 629; Moore v. Moundcastle, 61 Mo. 426; Harrison v. Craven, 188 Mo. 609.

NORTONI, J.—This is a suit for the purchase price of certain metallic pipe sold by plaintiff to defendant. The finding and judgment were for plaintiff and defendant prosecutes the appeal. A jury was waived and a trial had before the court.

It appears plaintiff is engaged in the railway supply business in the city of St. Louis, and the metal pipe involved here was furnished on his account by the American Spiral Pipe Works of Chicago, Illinois. Defendant desired the pipe to be used at Glynn, Louisiana, and interviewed plaintiff thereabout on December 26. The evidence tends to prove that plaintiff sold defendant the 500 feet of eighteen-inch metal pipe in thirty-foot lengths on terms of immediate delivery f. o. b. Chicago, to be shipped to Glynn, Louisiana, for the price of $750. The pipe was not promptly shipped, and defendant kept after plaintiff thereabout, while plaintiff urged the American Spiral Pipe Works of Chicago by telegram and telephone, until it was finally loaded on cars on the Chicago Belt Railway on January 5. However, this is conceded not to have been a delivery to defendant, for it seems the agreement contemplated the Illinois Central Railroad Company as the initial carrier, and the pipe was not delivered to that company until January 7.

On the morning of January 7, plaintiff delivered a bill of lading for the pipe to defendant, duly signed by the agent of the Illinois Central Railroad Company. This bill of lading was dated Chicago, January 5, and stamped in red ink on its face was the following: "It is expressly understood and agreed that this bill of

186MoApp7

lading is issued at the request of and for the convenience of the shipper, and that said freight has not yet been received by this Railroad Company and that no obligation in respect to said freight is assumed by this Railroad Company, nor shall this bill of lading be in force until said freight is received by this Railroad Company.'' However, no objection was made on the part of defendant to the fact that the pipe was not delivered to the Chicago Belt Railway Company until January 5 and the only objection interposed to the bill of lading was that it failed to recite the rate of freight to be fifty-eight cents per hundred pounds. This objection being raised against it, plaintiff returned the bill of lading to the American Spiral Pipe Works of Chicago and requested the insertion of the freight rate at fifty-eight cents. A few days thereafter the bill of lading was returned to plaintiff, but with the freight rate of eighty-three cents specified therein, for it appears such was the rate, and on the eleventh of January plaintiff delivered the bill of lading a second time to defendant, with an explanation concerning the rate. Defendant thereupon accepted the bill of lading so delivered to it on January 11 and it appears retained it throughout—that is, it was never returned nor tendered to plaintiff thereafter.

By a stipulation in the record it is agreed that the pipe was actually delivered on the car of the Illinois Central Railroad Company at Chicago on January 7, though the bill of lading was dated two days before, while it was in the custody of the Chicago Belt Railway Company. It appears that considerable delay in the shipment occurred after delivery of the pipe to the Illinois Central Railroad Company, for it did not pass through East St. Louis en route to Louisiana until January 16. On January 16 defendant learned that the pipe had passed through East St. Louis on that day and thereupon notified plaintiff

that he proposed to rescind the contract and reject the goods on account of the delay. Plaintiff declined to accede to this and insisted that he made the delivery to defendant without objection whatever thereabout on his part. Defendant proceeded and purchased pipe elsewhere and on the arrival of the consignment involved here in Louisiana, he refused to receive it, but thereafter, in order to save demurrage and diminish the damage, he unloaded and stored the pipe in Louisiana, but placed it at plaintiff's disposal. Plaintiff declined to further treat with the pipe as its property and insisted that defendant should pay the price therefor.

In his answer, defendant pleads a rescission of the sale and rejection of the goods because of plaintiff's failure to deliver the pipe on the cars of the Illinois Central Railroad Company at Chicago immediately as it agreed, and for a further defense interposed a cross-bill or counterclaim for damages, but it seems the cross-bill was wholly abandoned at the trial, for no evidence whatever was introduced tending to prove the amount of damages, if any, defendant suffered.

On scrutinizing the record, it appears the court found the issue for plaintiff on the theory that, though plaintiff had breached its contract for immediate delivery, defendant had nevertheless waived the breach and its right of rescission on that ground through accepting and retaining the goods and the bill of lading therefor without objection, and rejected the counterclaim for damages because no proof whatever was made with respect thereto.

On the facts in the record the judgment appears to be a proper one, for no one can doubt delivery of the pipe to the Illinois Central Railroad Company at Chicago on January 7 was a delivery to defendant, if accepted by him. The contract of purchase called for a delivery f. o. b. Chicago and the Illinois Central

Railroad Company is conceded to have been the initial carrier selected by defendant to receive the goods. Such being true, the delivery on January 7 to the Illinois Central Railroad Company was a delivery to defendant's agent. [See Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858.] Even if such delivery to the agent railroad company was late, it will suffice, if defendant subsequently ratified the act, as he did, through thereafter accepting the bill of lading. Though it be true, as argued, that the delivery of the bill of lading, of date January 5, to defendant on January 7, which recited, among other things, that the Illinois Central Railroad Company had not yet received physical possession of the goods, did not constitute a complete vesting of the title in defendant and a delivery to him, for the reason the goods were then in possession of the Chicago Belt Railway Company and not on the cars of the initial carrier—the Illinois Central Railroad Company—stipulated for, the subsequent delivery and acceptance of the bill of lading to defendant on January 11 certainly concluded that matter, for then, according to the stipulation in the record, the pipe was in the custody of the Illinois Central Railroad Company on its car and had been for four days theretofore—that is, since January 7. The agreed statement or stipulation of facts sets that matter at rest beyond question. On January 11 defendant received and accepted the bill of lading for the goods which were then, and had been since January 7, in possession of defendant's agent, the Illinois Central Railroad Company. No one can doubt that the delivery and acceptance of the bill of lading in such circumstances amounts to a delivery and acceptance of the goods. A bill of lading represents the goods for which it is given and its delivery passes the title as effectually as an actual delivery of the goods. [Smelting Co. v. Lead Works, 102 Mo. App.

158, 76 S. W. 668; Scharff v. Meyer, 133 Mo. 428, 34 S. W. 858; Benjamin on Sales (6 Ed.), sec. 813.]

Without objection whatever, defendant accepted the bill of lading on January 11 with full knowledge of the delay then accrued. Obviously such is to be regarded as an acceptance of the goods then in possession of its agent. Having thus accepted the goods and retained the *indicia* of title—that is, the bill of lading—throughout, it was certainly competent for the court to find, as it did, that defendant elected to waive his right to rescind and affirmed the sale. [See Kessler v. Perrong, 22 Pa. Sup. Ct. 578.] The rule is, that when time of performance is made an essential element of the contract of sale, such stipulation is regarded as being in the nature of a warranty that the goods will be delivered in the time agreed, and in case of failure of the vendor to so deliver, the vendee has the option either to rescind the contract and to refuse to accept the goods or to receive them and recover from the vendor his damages. [See Wall v. Ice & Coal Co., 112 Mo. App. 659, 87 S. W. 574; Redlands Orange, etc. Ass'n v. Gorman, 161 Mo. 203, 61 S. W. 820.] Here, though it appears defendant waived his right of rescission and accepted the goods, no one can doubt that it was competent for him to counterclaim for damages under the rule above stated, because of plaintiff's breach. But, as before said, no evidence whatever was introduced tending to prove damages, if any, accruing to defendant on that account. Obviously then the court did not err in denying the right of recovery on the counterclaim.

What has been said sufficiently disposes of all of the questions raised in the case and it is unnecessary to take up the instructions and discuss them separately. The judgment should be affirmed. It is so ordered   *Reynolds, P. J.,* and *Allen, J.,* concur.