BARNETT & COMPANY, plaintiffs in error, *vs.* TERRY & SMITH, defendants in error.

1. It is not sufficient to plead that a contract "was rescinded;" the plea should show how it was rescinded. (R.)

2. Where a tender of money is relied on, the Court may strike the plea, if the party has not the money ready to pay into Court. (R.)

3. A nonsuit will be refused if there be slight evidence to support plaintiff's case. (R.)

4. When a party shipped flour to another, and the consignee declined accepting it upon the ground that it was not such as he ordered, immediately notified the shipper of the fact and that he held it subject to his order, and the shipper afterward sent his agent to receive the flour, and the consignee set up his claim for freight and expense paid before delivery, and the agent declined paying the same, and went off, leaving the flour in the consignee's hands, and he had it sold as the property of the shipper; and on the trial of the case brought against the consignee, the Judge rejected the testimony of a witness showing the sale and what the flour brought:

*Held,* The Court erred; for the consignee had a right to be paid the actual amount of freight and expense on the flour,. if it did not come up to what he ordered, which he was entitled to receive before he gave up the possession of the flour :

*Held,* That the consignee had the right after reasonable notice to the consignor of such expense and its non-payment, to sell sufficient for his reimbursement, and if the commodity was perishable, to sell all, and by proof show his actings and doings in the premises; and the jury on the trial, to ascertain the value of such commodity, will consider, as competent evidence, what it actually brought, in connection with the mode and manner, and necessity of the sale.

Rescission. Lien. Before Judge JOHNSON. Muscogee Superior Court. May Term, 1870.

Terry & Smith, commission merchants, sued Barnett & Company on an open account for cash advanced in purchasing goods for them, commissions, etc. Part of the items were as follows : 1866, January 2d, to cash advanced for one hundred and thirty barrels flour, invoiced superfine, $962 00, fifty barrels flour, invoiced extra, $437 50. The defendants pleaded that all the other items of the account had been paid, and that they did not owe for the flour, because it was un-

sound and not such as they had ordered, and upon its arrival they advised plaintiff that they would not receive it and plaintiff accepted it back and thus relieved them of liability for the said advances.

The record shows no more than this. But the *bill of exceptions* recites that defendant also pleaded, 1st. " That the contract for the sale of said flour was, before the commencement of this suit, rescinded, and of this they put themselves upon the country. 2d. That during the pendency of this suit they tendered to plaintiff's attorney $329 05, with interest and costs of suit, the full amount due on the account sued on, and the same was refused; " that they have at all times since been and still are ready and willing and now offer to pay the same to the plaintiff, and this they are ready to verify." And the bill of exceptions recites that the Court struck said " 1st" plea, because it did not aver any return of the flour, nor any offer to return it, and that he struck the " 2d " because defendant's attorney, when asked if they had said money in Court to deposit, they said no, that their clients were not present.

All else that transpired upon the trial, necessary for an understanding of the decision of this Court, was substantially as follows : The payment of the other items of the account was not controverted. Plaintiffs introduced evidence to show that said flour was such as was ordered and sound, and that when their agent offered to take it back, defendants refused to deliver it unless plaintiffs would pay what defendants had paid out on it for freight, etc., and also pay $570 00, which defendants claimed because a former shipment of one hundred and eighty-five barrels of flour was not good, and by which the defendants reduced the balance against themselves to $329 05. A motion for non-suit was overruled.

On the part of the defense, various letters of plaintiffs were read, showing that plaintiffs claimed that the flour was good when shipped, was injured on shipboard (for which ship owner should pay) but stating that their agent would call and

take it back.   One of the defendants testified that the first lot of flour was paid for in November, 1865, before it arrived and before defendants had ever seen it, that it arrived in December, 1865, and was found to be inferior to such as was ordered, by $2 00 or $3 00 per barrel in value, and plaintiffs were at once advised that defendants held it subject to their order ; plaintiffs wrote that their agent would call and settle it, and he did call, and instructed defendants to sell it to the best advantage for and on account of plaintiffs.   The second lot arrived in February, 1868 ; defendants refused to receive it, alleging that it was not such as they ordered, and plaintiffs, upon notice of this, wrote that their agent would call and take charge of this second lot.   When the agent arrived, defendants showed him the flour, and turned it over to him, but, upon his being about to remove it, they demanded the freights which they had paid on this lot and the damages claimed on the first lot, and would not let him take it away, because he would not consent to the said demand.   This agent had sold and taken away ten barrels of it, but the next day the party to whom they were sold returned nine of them, (saying they were not merchantable, etc.) and said agent left with defendants what the other barrel had been sold for, and they put it to plaintiff's credit.   Without more, this agent went away.   The flour was likely to spoil, and defendants sold it for as much as they could get, and placed the amount to the plaintiff's credit.

He further proposed to testify that the actual expenses paid out by defendants on this last lot of flour was $754 55, to-wit: freight from Louisville, Kentucky, to Columbus, Georgia, $675 00; insurance, $43 55; drayage and wharfage, $36 00; but the Court rejected this evidence as irrelevant.

He further testified that they sold said last lot of flour for $1,789 00, from which, deducting said expenses, (rejected) plus $135 40 for other insurance, taxes and commissions on sales, left $899 05 due plaintiff; from which, deducting said

$570 00 damages claimed as to the former lot, left $329 05, the amount admitted to be due to plaintiffs.

The Court charged the jury among other things: 1st. That if the flour was such as was ordered, defendants were liable for it; but if it was not of the quality ordered, defendants were only liable for the value of that which was delivered according to the market price, and if the quality was inferior the defendants were entitled to have the price abated.

2d. Defendants could not rescind the contract and hold the flour for expenses unpaid, or for an unsettled balance in their favor; that the contract could only be rescinded by a return of the flour or an absolute and unconditional offer to rescind it.

He was requested to charge that "if the flour was not such as was ordered, and defendants, as soon as the flour was received, notified the plaintiffs that it was subject to their order, and plaintiffs sent an agent to Columbus for the flour, and if this agent took charge of and actually received from defendants and disposed of ten barrels of it, then, if, after that, defendants retained the balance and refused to deliver it until the expenses upon the same had been repaid, this did not revive the contract for the sale of the flour, and the jury should find for the defendants." He refused so to charge, but charged that if plaintiffs had received back any part of said flour, defendants were not liable for that part, but if they refused to deliver any of it to the plaintiffs, they were liable for its value and could not retain it for expenses or an unpaid balance, and at the same time put an end to the contract.

The verdict was for plaintiffs, for $1,249 90 principal, $309 60 interest, and costs of suit.

Barnett & Company say that the Court erred in rejecting said part of the evidence of defendant, in charging as he did, and in said refusal to charge.

PEABODY & BRANNON, for plaintiff in error.   Rescission is a defense:   Code, section 2808 ; 2 Par. on Con., 677, and is a question for the jury, 2 Par. on C., 677 ; 4 M. & G., 898.

RAMSEY & RAMSEY, by BLANDFORD, for defendants.

LOCHRANE, C. J.

This was an action brought to recover money alleged to be due on an open account.   When the case came up for trial the defendant pleaded, among other things, that the contract relative to the item of flour, which formed the matter in controversy, had been rescinded before the commencement of the suit, and also a plea setting up tender of a certain amount in payment.   The Court struck out these pleas, the one on the ground that the plea did not allege a return of the flour, or offer to return it, and the other on the ground that the money alleged to be due and tendered, was not in Court ready to be deposited.   The case proceeded to the jury, and evidence was submitted by plaintiff, when the defendant moved a nonsuit, which the Court overruled.   Then defendant offered in evidence the answers of Myers to a set of interrogatories, which were stricken out by the Court; and these rulings, together with the Judge's charges and refusal to charge form the basis of assignment in error upon which the case comes before this Court.

1. The practice of our Courts is based on no technical theories, and when the cause of action or of defense is substantially stated—plainly, clearly and distinctly set forth—objections to form are not favored.   But in the plea of recision of contract, we are of opinion that it is not sufficient to simply *set out* the fact as a legal result; but the opposite party is entitled to be put in the possession of the circumstances relied on to establish it.   If in writing, it should be set out; and if arising from evidence, sufficient clearness of statement of the points relied on ought to be averred.

2. In relation to the plea of tender. The inquiry made by the Court was one within his discretionary power. When tender is set up in bar of an action pending, the Court may call on the party tendering to pay the money into Court. It is an admission of so much money due, and if the party relies on it as a plea to release him from interest, it is not error to call upon him to comply with his offer, for the plea sets up he is then and has always been ready to pay that sum admitted to be due. If he desires advantage from it he must be ready to. perform when called on by the Court.

3. We go on, however, to the more important question of this case. Non-suit will not be granted when there is slight evidence to go to the jury. In this case, we find by reference to the evidence, that there was sufficient to have carried the case to the jury, and there was no error in overruling the motion for non-suit.

4. But we are of opinion that the Court erred in rejecting the testimony of Myers, offered by the defendants. It appears that Terry & Smith sent a lot of flour to Barnett & Company, which flour was not according to the order of the parties; and when received, Barnett & Company at once notified Terry & Smith that they held the flour subject to their order. They then sent an agent to Columbus to take charge of the flour, who sold some part of it, when Barnett & Company set up their claim to freight paid out and storage expenses upon the flour. It is also in evidence that they set up claim for some damage which they held against the parties on a former shipment of flour. The agent of Terry & Smith refused to take the flour and pay these demands; and Myers' evidence, rejected, was to the effect that he had sold the flour and gave account sales and amounts.

The Judge charged in effect against the right of Barnett & Company to set up their claim for freight and expenses on this flour.

The rule of law governing cases of this character, we lay down to be this: Where a commission merchant ships pro-

duce to another, who receives the same, paying freight and expenses thereon, and on examination it is found that the articles are not in kind or in quality what were ordered, and he at once gives notice to the shipper of this fact and that he holds subject to his order, in such case the act of receiving is not such a performance as makes the contract valid and binding on him; and the party shipping is bound for all freight and expense paid out in the premises; and the consignee has a lien on the property to this effect. And in case the party does not come forward and pay such freight and expense, and the consignee, in good faith, and when the property is of such a character as would deteriorate by length of storage, has some sold, his action in the premises is proper evidence to go to the jury, to be submitted with all the facts of the case, and to be considered by them in ascertaining the amount of verdict they should find. The value of the property being the main issue in such case, the price it sold at, if sold in good faith, is competent evidence to go to the jury, to show that fact, not conclusive but competent and pertinent testimony.

Judgment reversed, on the ground that the Court erred in rejecting Myers' evidence in this case.