MANUFACTURERS' COMMERCIAL CO. v. ROCHESTER RY. CO. et al.

(Supreme Court, Special Term, Monroe County. June 11, 1909.)

1. SALES (§ 201*)—PASSING TITLE—DELIVERY.

Where a contract for the sale of ties required delivery to the buyer f. o. b. Rochester, title did not pass on delivery to a carrier for transportation to the buyer, nor till arrival of the ties at the place of delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 535, 536; Dec. Dig. § 201.*]

2. ASSIGNMENTS (§ 85*)—CONFLICTING ASSIGNMENTS—PRIORITY.

Assignments on invoices for ties of the amount to become due thereon 30 days after delivery did not vest in the assignee any title to the ties, nor did any right vest in the assignee by reason of separate assignments of moneys to become due for ties in transit, superior to the right acquired by plaintiff pursuant to a prior assignment to it of all moneys to become due to the seller of a portion of the ties from the buyer, under the rule that an assignment prior in time is superior in right.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 149; Dec. Dig. § 85.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. ASSIGNMENTS (§ 85*)—PRIORITY—CONSIDERATION.

An assignment prior in time is not deprived of its priority over a subsequent assignment for money advanced on the faith thereof, because made in consideration of a pre-existing debt.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 149; Dec. Dig. § 85.*]

4. CARRIERS (§ 58*)—BILLS OF LADING—ASSIGNMENTS—RIGHTS OF ASSIGNEE.

Where bills of lading for ties loaded and shipped under a contract of sale designated the seller as the consignor and the buyer the consignee, and P. made advances on the faith of an assignment thereof while the ties were in the possession of the carrier, P. acquired a property interest in the ties, without an indorsement of the bills, which was prior in right to an assignment by the consignor of the proceeds of the ties to be paid by the buyer.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 187; Dec. Dig. § 58.*]

5. CARRIERS (§ 58*)—BILLS OF LADING—ASSIGNMENTS.

An assignee of bills of lading for ties for money advanced did not lose his priority over the former assignment of the purchase price by allowing the ties to be delivered to the buyer, who, on receiving them and acknowledging that the bills of lading had been assigned to cover advances made on the faith thereof, was bound to account to the assignee of the bills for the purchase price.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 186; Dec. Dig. § 58.*]

6. TRIAL (§ 51*)—RECEPTION OF EVIDENCE—CONDITIONAL ADMISSION.

Where evidence as to assignments of bills of lading was objected to as secondary, and was received on condition that the bills be produced, it could not thereafter be considered; the condition not having been complied with.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 125; Dec. Dig. § 51.*]

7. ASSIGNMENTS (§ 58*)—VALIDITY—ACCEPTANCE BY ASSIGNEE.

The validity of an assignment of the purchase price of material sold does not depend on the acquiescence of the buyer; the rights of the assignee not being subject to prejudice by any subsequent arrangement between the buyer and seller after notice of the assignment to the buyer.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 121; Dec. Dig. § 58.*]

Suit by the Manufacturers' Commercial Company against the Rochester Railway Company and another on an assignment. Decree for complainant.

This action was brought against the Rochester Railway Company as sole defendant to recover the price of certain railroad ties purchased by it of the Eccleston Lumber Company. A motion was made by the railway company for leave to pay the amount claimed into court and have Josiah W. Place interpleaded as defendant, under section 820 of the Code of Civil Procedure. The motion for an interpleader was denied, but an order was granted joining the said Place as a defendant in the action, who appeared and answered, whereupon the action was continued and tried as a suit in equity.

George A. Carnahan, for plaintiff.
E. A. Nash, for defendant Rochester Railway Company.
J. S. L'Amoreaux, for defendant Place.

SUTHERLAND, J. In August, 1906, the Rochester Railway Company contracted to purchase of the Eccleston Lumber Company 40,000

yellow pine ties, to be delivered f. o. b. at Rochester at 59 cents per tie, the freight to be paid by the purchaser on arrival of the ties and deducted from the purchase price, and the balance of the price for each shipment to be paid within 30 days after the delivery thereof. This contract was distinguished by the parties thereto as order No. 13,927. Other contracts for ties had been made between the same parties, which were not entirely fulfilled when order No. 13,927 was made and accepted. After the making of the contract, order No. 13,927, the Eccleston Lumber Company, which was indebted to the plaintiff for about $13,000, as security for said debt, then past due, gave to the plaintiff, under date of November 15, 1906, a written assignment of the moneys to become due to the Eccleston Lumber Company for 30,000 of the 40,000 ties to be shipped to the railway company under order No. 13,927; and on the same day the president of the plaintiff wrote the general manager of the Rochester Railway Company, advising him of the assignment of the claim and asking him to confirm the order and advise the plaintiff if there were any claims or offsets against the bills to be rendered thereunder; and on November 17th the president of the Eccleston Lumber Company also advised the plaintiff by letter as follows:

"In accordance with agreement with our bankers, the Manufacturers' Commercial Company, we have given them an assigned bill on 30,000 ties on account of our order from you, No. 13,927, and we request that, as these ties are delivered to you at destination and found acceptable, you pay your checks for same to the order of our bankers. We will load and ship out these 30,000 ties to you as rapidly as is possible by rail, now that the canal has closed, and expect to accomplish the entire shipment within the next three or four months. We ask that you please hold this bill for the 30,000 ties, and we will advise you specifically at once of each shipment we make on account of said bill for the 30,000 ties."

The bill reads as follows:

"The Eccleston Lumber Company,
"Nov. 15th, 1906.
"Sold Rochester Railway Company Rochester, New York,
"Your No. 13,927. Net cash within 30 days after delivery each lot.
To 30,000 6-in. x 8-in. ft. sound square edge yellow pine ties
    at 59c per tie...........................................$17,700 00
Estimated freight........................................ 4,650 00

                                  $13,050 00
"To be delivered to you at Rochester, N. Y."

November 19th, after receipt of both letters before mentioned, the secretary of the Rochester Railway Company wrote the president of the plaintiff as follows:

"Your letter of the 15th to Mr. Danforth has been received. In reply would say that we placed an order with the Eccleston Lumber Company, No. 13,927, for 40,000 yellow pine ties. Up to the present time no delivery has been made on this order, and there are no claims against it. As soon as this order has been filled, we shall be glad to remit, within 30 days, the amount due to any company designated by the Eccleston Lumber Company."

At the date of this correspondence and for three months thereafter, the Rochester Railway Company continued to receive shipments of ties on orders given previous to order No. 13,927; but in January, 1907,

the Eccleston Lumber Company commenced shipping ties on order No. 13,927, and continued shipments ostensibly under that order, which were received by the Rochester Railway Company as in fulfillment of that order, amounting in the aggregate to 84,555 ties. Separate invoices were made by the Eccleston Lumber Company of each car load or boat load of ties shipped under this order to the Rochester Railway Company. Upon certain of these invoices directions were indorsed to pay the amounts due thereunder to the plaintiff. The bills for separate shipments under order No. 13,927 thus designated to be paid to the plaintiff covered only 7,901 ties, the net purchase price of which was paid to the plaintiff before the commencement of this action. Plaintiff also holds a bill of lading for 1,604 ties not paid for, and the purchase price of these, less freight paid, amounts to $814.74, which clearly the plaintiff is entitled to receive from the Rochester Railway Company. The total number of ties shipped to the railway company by the Eccleston Lumber Company, for which the plaintiff has received the purchase price or is entitled to under said bill of lading, aggregates 9,505, leaving a deficit of the total 30,000 ties mentioned in the assignment of November 15th of 20,495, the net proceeds of the purchase price of which 20,495 ties the plaintiff claims it is also entitled to recover in this action.

It turns out, however, that while these ties were being shipped under order No. 13,927, the Eccleston Lumber Company was also dealing with the defendant Place, a banker of New York City, doing business under the name of J. W. Place & Co., who was advancing money to the Eccleston Lumber Company from time to time, taking as security therefor assignments of the bills for invoices of ties in transit to Rochester; and pursuant to the directions of the Eccleston Lumber Company written upon these bills the Rochester Railway Company, before the commencement of the action, paid to the defendant Place for ties shipped ostensibly under order No. 13,927 the net proceeds of 44,607 ties, amounting to $17,228.06. Ostensibly under the same order, the Rochester Railway Company has also received 24,020 ties, which are not paid for, which ties are covered, however, by invoice bills made while the ties were in transit and assigned to the defendant Place. Upon the faith of these assignments and of bills of lading also assigned at the same time by the Eccleston Lumber Company to him, Place advanced moneys to the Eccleston Lumber Company and the Rochester Railway Company holds upwards of $11,000 due for these ties, subject to the direction of the court in this action.

In August, 1906, when the contract, order No. 13,927, was made, the railway ties were at various points in North Carolina, but had not been counted, separated, nor placed aboard cars or vessels for shipment pursuant to that order, and such was the condition November 15, 1906, when the assignment was made by the Eccleston Lumber Company to the plaintiff. The contract was wholly executory, and the title to the ties had not passed to the railway company. When the various assignments of invoices for the separate lots of ties in transit were made by the Eccleston Lumber Company to the defendant Place, the contract as to such ties was still executory. It is true the ties were on board cars or vessels consigned to the Rochester Railway Company

at Rochester, but the title to the ties was still in the Eccleston Lumber Company. Delivery of the ties to the Rochester Railway Company was not accomplished when the goods were placed aboard the cars or on boats headed for Rochester. The title did not pass until the ties arrived at Rochester, the point of delivery provided for in the contract made in August. When the separate invoices were assigned to the defendant Place, there was no money due thereon from the railway company to the Eccleston Lumber Company or to any one else. The assignments upon the invoices were only of the amounts to become due 30 days after delivery of the ties mentioned therein. These assignments did not operate to vest in the defendant Place any title or property in the ties themselves, and no right vested in the defendant Place by reason of the separate assignments of moneys to become due for ties in transit superior to the right vested in the plaintiff pursuant to the assignment to it of such moneys made November 15, 1906. On the contrary, the assignment to plaintiff, being prior in time, is superior in equity in so far as the rights of the parties are to be determined by the assigned invoice bills alone. Williams v. Ingersoll, 89 N. Y. 508; Fairbanks v. Sargent, 104 N. Y. 108, 9 N. E. 870, 6 L. R. A. 475, 58 Am. Rep. 490; Central Trust Co. v. West India Imp. Co., 169 N. Y. 314, 62 N. E. 387.

Under these cases, the fact that plaintiff's assignment was to secure debts already due, and the assignments to Place were to secure the repayment of money advanced on the faith of the assignments, does not give the defendant Place any advantage. But when we consider the effect of the assignment to the defendant Place of bills of lading covering ties in transit, on the faith of which assigned bills of lading advances were made by Place, another principle is operative which gives him the advantage over the plaintiff. In the bills of lading the Eccleston Lumber Company was named as the consignor and the Rochester Railway Company the consignee. While the ties were on board cars or boats the Eccleston Lumber Company, by transferring to him the bills of lading therefor, gave to Place an immediate property interest in the ties themselves, and no indorsement was necessary to make the transfer effectual. Bank of Rochester v. Jones, 4 N. Y. 497, 55 Am. Dec. 290; City Bank v. R., W. & O. R. R., 44 N. Y. 136.

By allowing the ties subsequently to be delivered to the Rochester Railway Company, Place did not thereby lose the advantage acquired by him through the bills of lading; and the Rochester Railway Company, receiving the ties with knowledge that bills of lading thereof had been assigned to the defendant, Place, for cash advanced on the faith thereof, is bound to account to Place directly for the purchase price of the ties covered by said bills of lading; and Place's rights under the assigned bills of lading are superior to the rights of the plaintiff under its prior assigned invoice bill of November 15, 1906, Place being in legal effect a purchaser in good faith of the chattels themselves while in the possession and under the control of the owner, and without notice of plaintiff's claim. First Nat. Bank v. Ege, 109 N. Y. 120, 125, 16 N. E. 317, 4 Am. St. Rep. 431; Commercial Bank of Keokuk v. Pfeiffer, 108 N. Y. 242, 15 N. E. 311.

But as to the ties already paid for to Place & Co., aggregating 44,-

607 in number, there is no competent evidence that bills of lading were assigned by the Eccleston Lumber Company to Place. The defendant Place testified in the first instance, concerning the ties already paid for, that at the time of the assignment of each invoice of such ties in transit he also received a bill of lading; but the evidence in regard to the bill of lading was objected to, and was received on condition that the bills of lading should be produced, or that a proper foundation be laid for the introduction of secondary evidence relating thereto, and that a motion to strike out should be entertained if the condition were not complied with. It is true that the defendants showed that the bills of lading were delivered to the Lehigh Valley Railroad Company or the canal boat company when the ties were received by the Rochester Railway Company, or shortly after; but it does not appear that those bills of lading could not have been produced in court under proper subpœna, and it seems to be necessary, therefore, to grant the plaintiff's motion to strike out all testimony to the effect that bills of lading were actually transferred to Place, where the original or duplicate bills were not offered in evidence; and, this testimony being stricken out, we have only left the assigned invoices for the 44,-607 ties to support the payments to Place already made. Consequently the defendant Rochester Railway Company, upon the evidence remaining in the case, appears to have paid the defendant Place moneys which should have been paid to this plaintiff.

In this respect, however, it is insisted on behalf of the Rochester Railway Company that it was justified in making these payments because of the directions so to pay indorsed upon the various invoices assigned to Place; and reliance is placed upon the clause in the letter of the president of the Eccleston Lumber Company to the Rochester Railway Company of November 17, 1906, quoted above, viz., "We ask that you please hold this bill for the 30,000 ties, and we will advise you specifically at once of each shipment we make on account of said bill for the 30,000 ties," and also upon the letter of the secretary of Rochester Railway Company to the plaintiff, written November 19th, stating, "As soon as this order [No. 13,927 for 40,000 yellow pine ties] has been filled we shall be glad to remit, within 30 days, the amount due to any company designated by the Eccleston Lumber Company"; and the words quoted are pointed out as adding a condition to the assignment of November 15th, and as justifying the payments to Place, because all of such payments were pursuant to specific designation by the Eccleston Lumber Company.

But the validity of the assignment to the plaintiff of November 15th did not depend upon the acquiescence of the Rochester Railway Company. Brill v. Tuttle, 81 N. Y. 454. The railway company had immediate notice of the assignment to plaintiff, and no subsequent arrangement made between the lumber company and the railway company, to which the plaintiff was not a party, could cut down the rights thus vested in the plaintiff. There is no evidence that the plaintiff knew of the letter written November 17th by the lumber company to the railway company. The letter of the railway company to the plaintiff, written November 19th, did not warn the plaintiff that the lumber company was contemplating anything inconsistent with plaintiff's as-

signment. The lumber company had already designated the plaintiff as the payee of the proceeds of 30,000 of the 40,000 ties, so that the letter of the railway company to the plaintiff is in every way consistent with the assignment to the plaintiff; and I am satisfied that the plaintiff did not know that the Eccleston Lumber Company was assigning these later invoices under order No. 13,927 to the defendant Place. Under the plaintiff's assignment the payment for future shipments of lumber under order 13,927 was not made to depend in any way upon subsequent notifications or designations by the Eccleston Lumber Company; and ignoring, as we must, the bills of lading for ties already paid for, because they were not properly proved, it is necessary to hold that, when the first 40,000 ties were received by the Rochester Railway Company under order 13,927, the proceeds of 30,000 of that first 40,000 should have been paid to the plaintiff, notwithstanding the directions contained in the specific invoice bills to pay the proceeds of those sales to the defendant Place.

There must also be stricken out of the case the testimony as to bills of lading, not produced, covering 7,209 ties not paid for. Letters introduced in evidence show that certain bills of lading relating thereto were delivered to the Lehigh Valley Railway Company; but as the bills of lading are the foundation for the right of Place to receive the money therefor, the bills of lading themselves should have been offered in evidence, and it is not shown that they could not have been produced under proper subpœna at the trial.

In order that the equities of the defendants between themselves may be adjusted as far as may be, findings may be submitted and the decree settled upon five days' notice, at which time provision will be made for the allowance of costs.