Cropsey, J.
This action was tried at Trial Term without a jury. There is little or no dispute on the facts. A broker in London communicated with the defendant in Chicago, asking if it had thorium for sale. The defendant replied, referring the broker to its brokers in London, who would quote prices. Thereafter there was various correspondence between the two brokers, and finally the defendant’s brokers submitted an offer from the defendant. This the broker who had first communicated with the defendant accepted in a cable sent to the defendant at Chicago, and the defendant’s confirmation of this acceptance was contained in a cablegram sent to its London agents and transmitted by them to the first broker. The acceptance of the final order showed *555 that the goods were being purchased for a corporation in Holland. The thorium was to be delivered in six monthly installments at the price of four dollars a pound, cash in advance, c. i. f. Rotterdam. Later by mutual consent, the contract was changed to c. i. f. London dock. The defendant shipped some of the monthly deliveries but failed to ship the balance. This is an action to recover the damages sustained by the buyer, the plaintiff being its assignee.
The plaintiff claims the contract was madé in London. The defendant claims it was made in Chicago. It would seem that the latter contention was correct, but the decision of this disputed question is really immaterial. In an action between buyer and seller for damages for nonperformance of a contract of sale the place of delivery is the important factor. The damages are measured by the value of the goods at the place of delivery and not at the place where the contract was made. Saxe v. Penokee Lumber Co., 159 N. Y. 371; Oswego Falls P. & P. Co. v. Stecher Lith. Co., 215 id. 98, 106, 107. This rule must not be confused with the rule applicable where the breach is of a contract to transport instead of a contract to sell. Where a party agrees to carry goods to a designated place the damages arising from his failure to perform are measured by the value of the goods at the place of destination. Sturgess v. Bissell, 46 N. Y. 462; Sherman v. Hudson River R. R. Co., 64 id. 254, 259; Lowenstein v. Lombard, Ayres & Co., 164 id. 324, 334; Wallingford v. Kaiser, 191 id. 392, 395; Rice v. Baxendale, 7 Hurlst. & Norm. 96; Stroms Bruks Aktie Bolag v. Hutchison, (1905) App. Cas. 515.
The question here is what was the place of delivery under this contract. That is a question to be determined according to the intention of the parties. *556 Smith v. Edwards, 29 Hun, 493; United States v. Andrews Co., 207 U. S. 229.
Ordinarily in the absence of special facts a contract to sell goods is completed when the seller delivers them to a carrier to be transported to the buyer. That constitutes a delivery to the buyer, and this is true although the goods are not then paid for. Krulder v. Ellison, 47 N. Y. 36; Gilbert v. New York C. & H. R. R. R. Co., 4 Hun, 378, 381; 35 Cyc. 193 et seq.; White v. Schweitzer, 147 App. Div. 544; 17 L. R. A. 179 n.
But the above rule does not apply if the seller agrees to deliver the goods at the buyer’s place or makes some other agreement showing a different intention of the parties. Westmoreland Coal Co. v. Syracuse Lighting Co., 159 App. Div. 323; Manufacturers Commercial Co. v. Rochester Railway Co., 117 N. Y. Supp. 989, 992, 993; Braddock Glass Co. v. Irwin & Co., 153 Penn. St. 440; 22 L. R. A. 421 n. So under the common provision f. o. b. place of shipment, the seller’s obligation is completed when he ships the goods and title to them passes then, and he is not obliged to pay the freight. But if the agreement is f. o. b. place of destination the seller must pay the freight and may be deemed to have retained the title to the goods until their arrival at the point of destination. Gass v. Astoria Veneer Mills, 121 App. Div. 182; Pacific Iron Works v. Long Island R. R. Co., 62 N. Y. 272; Gourd v. Healy, 137 App. Div. 323; Williston Sales, 409; Sheffield Furnace Co. v. Hull Coal & Coke Co., 101 Ala. 446, 481, 482; Neimeyer Lumber Co. v. Burlington & M. R. R. Co., 54 Neb. 321; 40 L. R. A. 534. But if there is anything to show that the intention of the parties was different that will control. Hence the fact that the freight was paid by the seller is not conclusive that the delivery was to be *557 at the place of destination. Dannemiller v. Kirkpatrick, 201 Penn. St. 218, 224, 225; McLaughlin v. Marston, 78 Wis. 670, 677, 678. And where goods were to be shipped at Antwerp for New York, delivery was held complete upon shipment and the damages were measured by the value of the goods at Antwerp and not at New York. Cahen v. Platt, 69 N. Y. 348. And under a contract by which plaintiff “ sold and agreed to ship to defendants in New York ” goods at an agreed price “ less the freight” between point of shipment and New York, title was held to pass upon the delivery of the goods to the carrier. White v. Schweitzer, 147 App. Div. 544. A contract to sell “ f. o. b. con-, tinental port inspection at seller’s works ” was held to put the cost of the inspection upon the seller. Silberman v. Clark, 96 N. Y. 522. Where a contract for the purchase of goods for cash f. o. b. place of shipment, buyer to assume all costs of removing the same from the yard where located, the latter provision was held to control, as it showed the intention; and so it was held that the expense of putting the goods on the cars had to be borne by the buyer although the provision f. o. b. would ordinarily have required the seller to do so. Burgess Sulphite Fibre Co. v. Broomfield, 180 Mass. 283, 287.
The provision c. i. f. seems to have been rarely used in commercial contracts in this country. Many text books contain no mention of the term and but few cases have been found here which touch upon its meaning. The provision, however, is common in England and has been used there frequently in shipping contracts.
Its meaning is stated in 11 Corpus Juris, 765. It is an expression indicating that the price fixed covers the cost of the goods and insurance and freight on them to the place of destination. Sometimes the *558 initials are transposed — c. f. i.— but the meaning is the same. Under a contract containing such a provision the seller must ship the goods, arrange the contract of affreightment to place of destination and pay its cost or allow it from the purchase price, and procure insurance for the buyer’s benefit for the safe arrival of the goods and pay therefor. 23 R. C. L. tit. “ Sales,” § 158. When the seller has done this and forwarded the papers to buyer he has fullfilled his contract, and delivery is complete. There is no obligation by the seller to deliver the goods at the place of destination. Ireland v. Livingston, L. R. 5 H. L. 395, 406; Biddell Bros. v. Clemens Horst Co., (1911) 1 K. B. 214; Groom, Ltd., v. Barber, (1915) Id. 316; Crozier, Stephens & Co. v. Auerbach, (1908) 2 id. 161; Landauer v. Craven, (1912) Id. 94; Karberg v. Blythe, (1916) 1 id. 495; Mee v. McNider, 109 N. Y. 500; Williston Sales, 408. The principle, above referred to, was stated and approved by the Supreme Court of the United States in Thames & Mersey Marine Ins. Co. v. United States, 237 U. S. 19, 26. This is the meaning and effect of the letters e. i. f. in the absence of any agreement to the contrary or any provisions showing a different intention. And in the case at bar there is nothing that requires a different meaning being given to this commercial expression.
That such is the meaning that must attach to this expression is emphasized by the requirement that the seller must procure insurance for the buyer’s benefit. This is a manifest indication that delivery was to be complete at the place of shipment and that the title to the goods was in the buyer from that time. If this were not so why would the buyer require the seller to procure insurance for him! If the goods were still the seller’s until they reached their destination the risk of their safe arrival would be the *559 seller’s and the buyer would have no concern about that. He would lose nothing if the goods did not arrive; the loss would fall upon the seller. This and similar provisions in contracts have been held to be controlling factors in determining the intention of the parties. Martz v. Putnam, 117 Ind. 392, 402; Tragelles v. Sewell, 7 Hurlst. & Norm. 574; Elgee Cotton Cases, 22 Wall. 180; Stewart v. Henningsen Produce Co., 88 Kan. 521.
If it was the intention of the parties that delivery should not be complete until the goods arrived at London, a “ f. o. b. London ” provision could have been inserted in the contract. The difference between a f. o. b. London contract and a c. i. f. London contract has been pointed out. And that the parties understood there was a difference between those terms is apparent from the correspondence they had had. Different propositions were made at different times. The first was an offer c. i. f. London; later an offer “ delivered London;” and still later an offer f. o. b. Chicago; and finally the contract in suit c. i. f. Rotterdam, subsequently changed to c. i. f. London dock. All this confirms the usual meaning of the c. i. f. provision and shows the parties did not intend that the delivery should be at London under the contract they made.
There is nothing here to show the parties had in contemplation that the value of thorium in London should be the measure of damages as there was in Durst v. Burton, 47 N. Y. 167. What those circumstances were in that case does not appear in the opinion and whether or not that was the intention of the parties seems not to have been litigated. The only question decided was whether the value of the goods at some place which was neither that of delivery nor that within the contemplation of the parties could be accepted.
*560 The provisions of the Personal Property' Law have not been overlooked. Buie 5 of section 100 reads, “ If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon.” This rule is to be applied “ unless a different intention appears.’’ But this statute cannot be applicable to the contract under discussion. This contract was neither made nor was it to be performed in New York. But if this was a New York contract it is not clear that this quoted rule would control. It does not include one of the provisions that is contained in a c. i. f. contract, the procuring of insurance for the buyer’s benefit. And that provision, as has been pointed out, clearly indicates “ a different intention ” as to when the title shall pass than would follow under the rule.
The plaintiff proved the value of thorium in London but offered no proof as to its value in Chicago. Defendant’s proof of the Chicago value plus freight and insurance charges, is therefore undisputed, and must be accepted. That is the basis upon which plaintiff’s damages must be calculated. The same rule of damages applies where there is no shipment made as where a shipment is made that does not conform to the contract. Crozier, Stephens & Co. v. Auerbach, (1908) 2 K. B. 161, 165.
Judgment for the plaintiff accordingly, with costs.
Judgment for plaintiff, with costs.